Fass and another, imp., vs. Seehawer and others.

*April 15 — May 15, 1884.*

60 525
81 332
―――――
60 525
56 LRA 914n

Milwaukee City Charter: Street Improvements. *(1) Notice to lot-owner to do work: Determination of board of public works as to reasonable time, how far conclusive. (2) Notice may be by publication. (3) Petition by majority of resident owners, when sufficient. (4) Conveyance to escape assessment held ineffectual. (5) When delay of contractor does not avoid assessment.*

1. Sec. 26, ch. 401, P. & L. Laws of 1869, provided that when the board of public works of Milwaukee ordered a street to be improved at the expense of adjoining lot-owners, it should give them notice to do the work "within a *reasonable time* therein to be specified," and if the work was not done within that time it should contract for the doing thereof. *Held,* that the board must determine, in the first instance, what is a reasonable time, and, in the absence of fraud, an error in its determination cannot be taken advantage of collaterally, in a court of equity, by a lot-owner who was not injured thereby. The court is inclined to the opinion that when attacked collaterally the determination of the board is, in the absence of fraud, conclusive. *Foote v. Milwaukee,* 18 Wis., 270, distinguished.

2. The option given to the lot-owner to do the work himself is a mere favor, and the law requiring notice to be given to him by publication only, is valid.

3. The charter of Milwaukee (sec. 3, ch. 401, P. & L. Laws of 1870) provided that no work chargeable to the lots fronting thereon should be ordered without a petition signed by residents of the ward, "owning a majority of the feet in front of all the lots fronting upon such improvement owned by residents of such ward;" but that "in case the majority of feet in front of all the lots in any one block fronting upon such improvement is owned by nonresidents of such ward, then such work may be ordered

upon the petition of the resident owners of a majority of feet in front of any adjoining block, or the block opposite," etc. *Held,* that an improvement in front of six blocks having a frontage of 1,800 feet, of which 1,350 feet were owned by nonresidents, was properly ordered upon the petition of the resident owners of 300 feet, although several of such blocks were owned entirely by nonresidents and there were no resident owners on adjoining or opposite blocks.

4. A conveyance of a strip one foot wide along the side of a lot which abutted upon a street, made without consideration, in anticipation of a proposed improvement, for the purpose of relieving the balance of the lot from an assessment therefor, and with the understanding that it should be reconveyed on request, is *held* fraudulent and of no effect as to such assessment.

5. A lot-owner cannot take advantage of the failure of a contractor to complete a street improvement within the time specified in his contract, to avoid a tax certificate based upon an assessment for such improvement, unless he shows that he was injured by such failure.

APPEAL from the Circuit Court for *Milwaukee* County.

This action was brought to foreclose a tax certificate issued to the city of Milwaukee on a sale of a certain lot therein specified, for nonpayment of a special assessment thereon for a street improvement. The city duly assigned such certificate to the plaintiffs, who are the owners and holders thereof. The complaint is in the usual and proper form.

The answer of defendants *Seehawer* and wife contains several counterclaims alleging various errors and irregularities in the proceedings of the city authorities in ordering and making the improvement, and the assessment therefor, which it is claimed render the tax sale and certificate invalid. The relief demanded is that such tax certificate be adjudged null and void, and that the same be surrendered and canceled.

The alleged grounds upon which the demand of the defendants for relief is mainly based are the following: (1) The defendant *John Seehawer*, who theretofore was the owner of the lot described in the tax certificate, and his

wife, sold and conveyed to one Meyer a strip thereof one foot wide, abutting the improvement, long before the work was ordered, and the improvement does not abut the portion of the lot retained by *Seehawer;* hence only the strip conveyed to Meyer is liable to assessment for the cost of the improvement. (2) No sufficient petition for the improvement was presented to the common council of the city, as required by the city charter, and therefore the council had no power to order the improvement. (3) The board of public works of the city failed to give the owner of the lot proper notice to do the work himself (should he desire to do so), before letting the contract therefor, or to allow him a reasonable time within which he might do it. (4) The work was not done within the time required by the contract, or limited by the common council.

The character and extent of the improvement, and all of the proceedings preliminary to the issuing of the tax certificate, and the assignment thereof to the plaintiffs, sufficiently appear in the findings of fact by the court. These are as follows:

"1. That the plaintiffs are the holders and owners of a pretended tax certificate, issued January 25, 1875, for the sale of the whole of lot 2, block 12, in the Sixth ward of the city of Milwaukee, to the city of Milwaukee, for $350.23, and taken and held by said city for the use of the holder of certificates of the board of public works of said city, numbered 102, 111, and 124, amounting to $349.98, and transferred to the plaintiffs by the indorsement of the treasurer of said city.

"2. That said tax certificate was issued upon certain certificates of the board of public works, which were issued, respectively, for the grading, paving gutters, graveling, and planking sidewalk in front of said lot 2; said work being part of the improvement of Walnut street, between Third street and Short street (now Island avenue), in said city.

"3. That said improvement was ordered by the common council of said city in the month of May, 1871, upon the petition of Joseph Schlitz, William Rosch, and Carl Busack, praying, among other things, that Walnut street, between Third and Short streets, be graded to the established grade, the gutters paved, roadway graveled, and sidewalks planked.

"4. That said improvement so petitioned for was wholly within the Sixth ward of the city of Milwaukee, extended a distance of three blocks, and covered a frontage of 900 feet on each side, exclusive of street crossings, each block having a frontage of 300 feet.

"5. That, at the time said petition was made and presented to said common council, said Joseph Schlitz did not reside in said Sixth ward, and said William Rosch and Carl Busack, who did reside in said ward, then each owned premises having a frontage of 150 feet on said Walnut street, between Third street and Short street, on opposite sides of Walnut street.

"6. That, at the time said petition was made and presented to said common council, the majority of feet in front of all the lots in each and every block fronting upon such improvement, between Second street and Short street (there being between Second street and Short street two blocks on the north side and two blocks on the south side of Walnut street), were owned by nonresidents of said Sixth ward.

"7. That said petition praying for said improvement was not signed by owners, resident in said ward, of a majority of feet in front of any block adjoining or opposite to any of the said four blocks lying between Second street and Short street, and fronting on said improvement.

"8. That at the time said petition was made, and for about ten months prior thereto, said defendant, *John Seehawer*, was, and still is, the owner in fee of the south forty-nine feet of said lot 2, in said block 12, and that ever since June, 1870, up to August 2, 1876, one William Meyer was

the owner in fee of a strip of land one foot wide, taken off from said lot 2, on the north side thereof, adjoining said Walnut street, said strip having been conveyed to him by said *Seehawer* and wife by a deed of conveyance thereof in due form, which was duly witnessed, acknowledged, and delivered, and recorded in the office of the register of deeds, in June, 1870, and has ever since so remained of record; that such deed to William Meyer was made by the defendants *Seehawer* and wife for the express purpose of evading the lien of such improvements, without consideration, and upon the understanding that the premises should, on request, be reconveyed; that such conveyance was made before the date of the petition for such improvement; that on the 2d of August, 1876, said Meyer caused a reconveyance of said strip to defendant *Seehawer* to be recorded.

"9. That, as a part of the proceedings incident to causing said improvement to be made, the board of public works of said city caused a notice to be published in the city official papers for six days, commencing on the 26th day of May, 1871, wherein the owner or agent of any lot or parcel of land, fronting on said improvement, was required to do the work mentioned in said notice, to wit, the grading of the street to the center thereof to the established grade, and graveling the same, paving the gutter, and planking the sidewalk, and have all said work fully completed on or before the 1st day of July, 1871.

"10. That at the time said notice last aforementioned was made and first published, and thenceforth until said 1st day of June, 1871, Second street, lying immediately west of said lot 2, and First street, lying next east of said block 12, of which said lot 2 is a part, were both very much below the established grade, and the crossings of said streets were included in the same improvement of said Walnut street, and in the resolution of said common council ordering said improvement to be made.

" 11. That the work required in said improvement to be done in front of said lot 2, embraced 5,820 cubic yards of filling, 111 cubic yards of graveling, 91⅜ square yards of gutter paving, and 165 lineal feet of planking of sidewalk; and, at the time said notice was given, said Walnut street, in front of said lot 2, was upwards of eighteen feet below said established grade.

" 12. That the time limited in said notice so given by said board of public works, within which the owners of said lot 2 were required to do all the work aforesaid, was not a reasonable time, but, on the contrary, was an unreasonably short time for doing said work.

" 13. That the owners of all the premises fronting on said improvement, between Second and Short streets, having failed to do any of said work within the time limited in said notice, the board of public works, on August 21, 1871, entered into two several contracts with one Frederick Krause and one William Caspar, for doing the greater part of the work of said improvement, and completing the same on or before January 1, 1872; that in November, 1871, said board of public works, pursuant to a resolution of said common council, extended the time for the completion of said work so contracted for until April 20, 1872. The time for completing the work required in either of said contracts was never extended beyond that time. That afterwards, in the spring of the year 1874, none of said work having been completed under either of said contracts, the said Frederick Krause, with the consent of said board of public works, assigned his said contract (which was for the grading and paving of gutters in the greater portion of said improvement) to the plaintiff *Frank M. Fass;* and then and there said board of public works entered into a new contract with the plaintiff Henry Jante for the graveling required in said improvement.

" 14. The work described in said contract was completed

in October, 1874, whereupon certificates of such completion, relating to the work in front of said lot 2, in the usual form, were issued by said board of public works, which certificates are the same certificates, numbered 102, 111, and 124, hereinbefore mentioned.

"15. That the amounts specified in said several certificates remaining unpaid were afterwards entered upon the tax roll of said ward, and, the said tax also remaining unpaid, the whole of said lot No. 2 was afterwards sold for the nonpayment of said tax, and upon such sale the said tax certificate mentioned in the first finding of fact herein was issued.

"16. That said tax certificate remains unredeemed, and is an apparent lien on the whole of said lot 2."

From the above facts the court found, as conclusions of law:

"1. That the said tax certificate, for the foreclosure of which this action is brought, is null and void, because no sufficient and reasonable notice to perform said work was given to owners.

"2. That the said tax certificate ought to be adjudged null and void, canceled, and vacated."

Judgment dismissing the complaint and annulling the tax certificate was ordered and entered accordingly, with costs. The plaintiffs *Fass* and *Niemann* appeal therefrom to this court.

For the appellants there was a brief by *Johnson, Rietbrock & Halsey*, and oral argument by *Mr. Johnson.*

For the respondents there was a brief by *Cotzhausen, Sylvester, Scheiber & Jones*, and oral argument by *Mr. Scheiber.*

LYON, J. The circuit court gave judgment for the defendants, on the sole ground that no sufficient and reasonable time to perform the work ordered by the common

council was given to owners of lots fronting on the improvement, as required by the statute on that subject. P. & L. Laws of 1869, ch. 401, sec. 25. The statute (sec. 24) provides that an assessment of benefits shall be made by the board of public works. Sec. 25 provides that "thereupon said board shall give notice for six days, in the official city papers, to the owner or agent of any lot or parcel of land fronting upon any such improvement to be made, requiring him to do the work mentioned in such notice within a reasonable time therein to be specified, and if such work shall not be done within such time, the said board shall contract for the doing of the same as hereinbefore provided."

The court found that such notice was published by the board for six days in the proper official city papers, commencing May 26, 1871, requiring the owner of any lot or parcel of land fronting on the improvement to do the work mentioned in the notice by July 1st of the same year; and that the time limited for doing the work was unreasonably short. The court held that this failure to allow the owner sufficient time to do the work himself was fatal to the validity of the assessment, and rendered the tax certificate null and void. The question first to be determined is, Was this ruling correct?

The giving of the notice required by ch. 401, Laws of 1869, is doubtless a condition precedent to the authority of the board to let the contract for doing the work. No notice being given, the board would be absolutely powerless to make a valid contract to do the work, and thus the very groundwork of a tax to pay for the same would be wanting. It was so held in *Johnston v. Oshkosh*, 21 Wis., 184.

In this case, however, a notice was given pursuant to the requirements of the statute, except the time limited therein for the owner to do the work ordered was unreasonably short. Do the same consequences follow such a notice as would result from a failure to give any notice? The statute

does not prescribe the length of time the board shall give the owner in which to do the work. It requires generally that a reasonable time must be given, but leaves it for the board to determine, in the first instance, what is a reasonable time. The board necessarily determined, in the present case, that the time limited in the notice for the owner to do the work was a reasonable time. In this the board manifestly erred, but it was mere error, in our opinion, not going to the jurisdiction of the board to give the notice and act under it until reversed or modified. In a direct proceeding to review such determination, the circuit court, by virtue of its supervisory control over all inferior tribunals (Const., art. VII, sec. 8), would have corrected the error by directing the board to extend the time. But where, as in the present case, the determination of the board is attacked collaterally, and where no fraud is found or alleged, we are inclined to think such determination conclusive, and that the owner cannot be heard to allege that a reasonable time within which to do the work was not given him. But, however this may be, the board having jurisdiction to issue the notice, it is clear that, in a court of equity, the owner can take no advantage, collaterally, of any mere error or irregularity therein, unless he shows that he has suffered some injury thereby. No such injury is here alleged. It is not suggested that it would have been more advantageous to the owner of the lot in question to have done the work himself, or that he ever desired to do it, or would have done it had a reasonable time been allowed him for that purpose.

The views here expressed do not conflict with the decision of this court in *Foote v. Milwaukee*, 18 Wis., 270, upon which the learned counsel for the defendant relies to uphold the judgment of the circuit court in the present case. In that case the tax certificate was impeached for fraud in the notice to the owner to do the work and in letting the contract, as well as in the subsequent proceedings of the street com-

missioners. It was held, in the language of the opinion by DIXON, C. J., that "the complaint shows a most glaring and egregious case of fraud, which, if proved, would avoid the certificate and assessment, and render the whole proceeding a nullity." The judgment of the circuit court was reversed, because that court sustained a demurrer *ore tenus* to the complaint. The time fixed by the street commissioners for the owners to do the work ordered in front of their respective lots was unreasonably short, and it was alleged that the same was so fixed pursuant to a fraudulent conspiracy between the commissioners and the prospective contractors to do the work. In this case no fraud is alleged. The distinction between the two cases is obvious and vital, and the rule of law which determined the judgment in the former case has no application here.

Counsel also questions the validity of the statute which provides for giving notice to owners of lots abutting the improvement to do the work ordered, by publication in official papers, because it does not require personal notice to be given to such owners, or at least to such of them as reside in the city. The case of *State ex rel. Flint v. Fond du Lac*, 42 Wis., 287, is relied upon to sustain that proposition. To that case may be added several others to the same effect. Among these are *Hood v. Finch*, 8 Wis., 381; *Lumsden v. Milwaukee*, id., 485; *Seifert v. Brooks*, 34 Wis., 443. In all these cases the question of notice arose in proceedings to condemn lands to the public use. The grounds upon which these cases were determined are that such a proceeding is strictly adversary — the public, represented by some municipality, being one of the parties thereto, and the owner of the land proposed to be condemned to the public use being the other party,— and that the land-owner has a constitutional right to be heard (and therefore to due notice of the proposed proceedings), before there can be any valid condemnation of his property to the public use.

But we have here no such case. The improvement was regularly authorized, and the benefits regularly assessed against the defendant's lot, and the notice was only to give him the privilege of doing the work himself, should he so elect, instead of paying the assessed benefits in cash. We have here no element of an adversary proceeding,— no condemnation of property to the public use,— no imposition of a burden upon the owner,— following the notice in question. Besides, the owner has no inherent or constitutional right to do the work, and the option given him is a mere favor which the legislature may withdraw at any time. Hence the stat-ute would probably be valid if it made no provision for notice to the owner. Yet, where the statute requires such a notice to be given, the failure to give it is jurisdictional, and no valid tax can be levied for the benefits assessed. *Johnston v. Oshkosh*, 21 Wis., 186. We conclude that the statute providing for giving such notice by publication is a valid law.

It follows that the ground upon which the circuit court rested its judgment cannot be sustained, and the judgment must be reversed unless the tax certificate is invalid for some other cause disclosed in the record. Several other grounds of invalidity are alleged on behalf of defendants. These will now be considered in their order.

1. It is claimed that the petition for the improvement was insufficient to give the common council jurisdiction to order the same, and hence that all the proceedings are void for that reason. If the petition was insufficient under the charter, the conclusion seems inevitable that the whole proceedings, including the assessment, tax sale, and certificate, are null and void. The question is, therefore, Was there a sufficient petition presented to the common council to authorize the council to order the improvement to be made?

The provisions of the city charter under which the improvement was ordered are found in a proviso to sec. 3, ch.

401, P. & L. Laws of 1870. It reads as follows: "Provided, that no work chargeable to lots or parcels of land fronting or abutting on the same, except repairs, and except dredging, shall be ordered without a petition being first presented to the common council, signed by the residents of the ward or wards wherein such contemplated improvement is to be made, and owning a majority of the feet in front of all the lots fronting upon such improvements owned by residents of such ward or wards. However, in case the majority of feet in front of all the lots in any one block fronting upon such improvement is owned by nonresidents of such ward or wards, then such work may be ordered upon the petition of the resident owners of a majority of feet in front of any adjoining block, or the block opposite, in case such owners of lots so petitioning for such work shall have petitioned for or shall have similar work in front of the lots owned by them respectively in such adjoining or opposite block."

The improvement consisted mainly in raising the grade of Walnut street between Short and Third streets. It extends the length of three blocks on either side of Walnut street, each of which has a frontage on the latter street of 300 feet, exclusive of side streets and alleys. Of this frontage of 1,800 feet, only 450 feet was owned by residents of the ward in which the improvement was made. The remaining 1,350 feet belonged to nonresident owners.

The petition for the improvement was signed by the resident owners of 300 of the 450 feet frontage — owned by residents of the ward. It was signed, therefore, by the residents of the ward wherein the improvement was to be made, "owning a majority of the feet in front of all the lots fronting upon such improvement owned by residents of said ward," and is a literal compliance with the requirements of the first branch or sentence of the statute above quoted. This is conceded. But the question remains, How and to

what extent is that clause of the statute affected by the subsequent clause thereof? Counsel for appellants maintain that the clause enlarges the power of the common council, and confers upon it authority to make street improvements in certain cases where the resident owners of a majority of feet fronting on the proposed improvement, owned by residents of the ward, have not petitioned therefor. On the other hand, counsel for defendants maintain that the clause is restrictive of the power of the council, and deprives that body of power to order the improvement in certain cases, although the resident owners of a sufficient number of feet front, to answer the requirements of the first clause, have petitioned therefor. It is also claimed (if we correctly understand the argument) that if there is a block on the line of any proposed street improvement, the majority of the feet frontage of which belongs to nonresidents of the ward, the council cannot order the improvement made in front of that block without the petition of the requisite resident owners of an adjoining or opposite block, specified in the last clause or sentence of the statute, although the petition required by the first clause has been duly made.

It this is a correct view of the statute, the common council had no authority, and could obtain none, to order this improvement, because several of the blocks along the line of it were each owned entirely by nonresidents of the ward, and there were no resident owners on adjoining or opposite blocks. Hence there could be no petition for want of persons qualified to become petitioners.

It must necessarily happen, in a large and rapidly growing city like Milwaukee, that the public convenience requires that streets should be opened and improved through unsettled or sparsely settled portions of territory included within the city limits, and it may, doubtless often does, happen that a considerable portion of the lots or lands fronting the proposed improvement is owned by nonresidents of the ward in

which the same are situated.   In such cases (as in the present case) it might be impossible to obtain the petition which it is claimed the statute requires, and hence the improvement could not be made.

It is difficult to believe that the legislature intended to place such insuperable obstacles in the way of needed street improvements, and it should not be held that this has been done unless the language of the statute forces that construction.   The statute is very obscure.   It is not easy to determine its precise meaning and scope, and we shall not attempt to do so.   It is sufficient to say that its language does not require, and we cannot adopt, the restricted construction claimed by counsel.   Neither do we hold that the construction contended for on behalf of the appellants is the true one, although counsel states that the city has always acted upon that construction.   No doubt great weight should be given to that circumstance in construing the statute.   All this will be duly considered when a case shall arise calling for a more specific construction thereof.

It is sufficient in this case to say that we think, and so hold, that the petition for the improvement was signed by the persons whose signatures thereto conferred upon the common council power to order the improvement, and hence that the tax certificate in question is not void for want of power in the council in that behalf.

Before leaving this branch of the case it may be observed that the majority of the feet front of the block in which the defendant's lot is situated is not owned by nonresidents of the ward (assuming that defendant *Seehawer* owns the whole of lot 2), and is not within the terms of the statute authorizing resident owners of an adjoining or opposite block to petition on account of such nonresident owners.

2. The defendants *Seehawer* and wife conveyed to one Meyer a strip one foot wide, extending the whole length of lot 2 on the side abutting Walnut street, during the year

before the work was ordered. The balance of the lot, forty-nine feet wide, does not abut that street, and it is now claimed that such balance is not subject to assessment for benefits on account of the improvement.

The findings and undisputed evidence are that such conveyance was made in anticipation of the improvement, and for the express purpose of relieving the balance of the lot from an assessment therefor; that the conveyance was accepted by Meyer at the solicitation of defendant *John Seehawer;* that no consideration was paid therefor, but, on the contrary, said *John Seehawer* paid Meyer for accepting it; that the possession of the strip remains unchanged, and Meyer never asserted any claim or exercised any control over it; and that, at the request of the city attorney, he executed a reconveyance of it to said *Seehawer,* and the deed was duly recorded, but was never delivered to *Seehawer.*

The circuit court found that the deed by *Seehawer* and wife to Meyer was made upon the understanding that the strip of land should be reconveyed to the grantors on request. There is no direct evidence of such an understanding, but, from all the facts in the case, it is not unreasonable to infer that the grantors expected to get the strip back again after the peril of an assessment upon the remainder of the lot had passed.

Were the assessment of benefits on lot 2 confined to the one-foot strip, such assessment would necessarily be for a merely nominal sum, for the reason that the strip, dissevered from the lot, would be practically useless, and of little or no value, and could not possibly be materially benefited by the improvement. The result would be that the difference between such nominal assessment and the amount of benefits which would otherwise be assessed against the whole lot, would be payable out of the ward fund, which is raised by a tax on all the taxable property in the ward. If each lot-owner along the line of the improvement had pursued the

same course, no substantial assessment of benefits could have been made, and the whole, or nearly the whole, expense of the improvement would have been cast upon the tax-payers of the ward. Then, by paying the nominal assessments on the various strips, all of the lots abutting the improvement, and which the law contemplates shall bear a share of the cost of it to the extent they are benefited thereby, are relieved from the burden at the expense of the tax-payers of the ward. To sanction such a practice would be to subvert the whole system of assessments for benefits which has always prevailed in the municipalities of the state, and would seriously embarrass and retard those municipalities in the making of street and other needed public improvements. This case is a marked illustration of the justice and equity of the system just mentioned. The defendant *John See-hawer* testified that, before the improvement was made, the value of his lot was $250, and that after it was made the Schlitz Brewing Company offered him $10,000 for it. It is not difficult to believe that an assessment of $350 on his lot was a moderate one.

The conveyance of the strip to 'Meyer was an open and avowed attempt on the part of the grantors to perpetrate a gross fraud on the law, and on the tax-payers of the ward, and it would be a reproach and a disgrace to our jurisprudence if the courts, and especially a court of equity, should allow the attempted fraud to succeed.

We have no difficulty in holding that the whole of lot 2 was assessable for benefits on account of the improvement, notwithstanding the deed of the foot strip to Meyer.

3. As to the claim that the tax certificate is void because the work was not done within the time limited therefor in the contracts, or within the extended time granted by the common council, but little need be said. The fact remains that the work was done under the sanction of the board of public works. But, aside from that, the delay in doing the

work is primarily a matter between the contractor and the city. The defendant — the lot-owner — cannot be heard to complain of it unless he shows himself injured thereby. This he fails to do. Presumably, he was benefited by the delay, for during its continuance he was relieved from the obligation to pay interest on the assessment at the rate of twenty-five per cent. per annum.

Our conclusion upon the whole case is that none of the grounds upon which the defendants seek to sustain the judgment of the circuit court are tenable, and the judgment must therefore be reversed.

The plaintiff Jante does not join in the appeal, and the judgment of the circuit court, as to him, is not disturbed. As to the appellants, the judgment is reversed, and the cause will be remanded, with directions to that court to give judgment for the appellants, as prayed in the complaint, as their interest in the tax certificate may be made to appear.

*By the Court.*— Ordered accordingly.