Okey, J.
Elias Cohen, on August 30, 1879, brought suit in the court of common pleas of Cuyahoga county, against the city of Cleveland, for injuries to his real estate, which it is alleged he sustained by reason of the construction of a bridge, commonly called the viaduct, across the Cuyahoga river. An answer and a reply were filed, and on the trial testimony was offered tending to show that the plaintiff was entitled to a verdict; but it appearing that the plaintiff' had filed no claim for damages in accordance with the municipal code, § 564, 66 Ohio L. 245 (75 Ohio L. 324, Rev. Stats., § 2315), the court, in effect, directed a verdict against him, w'hich was returned accordingly. Judgment was rendered on the verdict, and the district court having affirmed the judgment, this petition in error was filed to reverse as well the judgment of the court of common pleas as that of the district court.
. The city of Cleveland', situated upon Lake Erie, is divided by the Cuyahoga river, which runs north to the lake. Superior street, for more than sixty years one of the principal *192 thoroughfares of the place, extends westwardly to the river, crossing Water street, which is pai’allel with the river, and distant about 768 feet .therefrom. Midway between Water street and the river, the premises of Cohen are situated. His lot, fronting twentj'-two and one-half feet on the street, has a depth of ninety feet, and his house is a three-story brick with stone basement. The street at this point is ninety-three feet wide. At the time the alleged grievance was committed, Cohen was and he continued to be sole owner of the premises and in possession.
The viaduct is a magnificent structure, extending from Water street,,above mentioned, to Pearl street near its junction with Dayton street on the other side of the river, and its roadway is nearly level. Its width is sixty-four feet, and it is so constructed as to accommodate travel of every sort. In order to construct this work, the city condemned a strip of ground on the south side of Superior street extending from Water street to the river, and the viaduct covers that strip to the width of thirty-seven feet opposite Cohen’s premises, and also covers part of Superior street, such part opposite Cohen’s premises being twenty-seven feet in width on the south side of the street. The elevation from the roadway of the viaduct to the surface of Superior street gradually increases from Water street to the river, and in front of Cohen’s property the elevation is forty-five feet.
The viaduct was constructed in 1877 and 1878, and the authority for building it is found in the act of 1872 (69 Ohio L. 138; 3 Rev. Stats. 616), and the act of 1876 (73 Ohio L. 107; 3 Rev. Stats. 617). These acts are supplementary to the municipal code; no objection which has been urged against their validity in this case is tenable; and in our judgmentthose acts, in connection with the municipal code, contain ample power for the erection of such structure. Hence, the viaduct can not be, in contemplation of law, a nuisance, but is a lawful structure ; and there is no complaint that there was negligence, malice, or bad faith which caused injury to the plaintiff.
But the right of Cohen to damages is not determined ad *193 versely to him by these facts. He is not entitled' to compensation under the letter of the constitution, article 1, section 19, but may be entitled to such compensation in analogy to that provision. Injuries resulting from the change of established grades in streets, though made in accordance with the statute, and without negligence or malice, and other injuries of a kindred character, have been held to afford ground for the recovery of damages against municipal corporations. Rhodes v. Cincinnati, 10 Ohio, 159; McComb v. Akron, 15 Ohio, 479 ; s. c., sub nom. Akron v. McComb, 18 Ohio, 229; s. c., 51 Am. Dec. 453; Crawford v. Delaware, 7 Ohio St. 459; Youngstown v. Moore, 30 Ohio St. 133; Keating v. Cincinnati, 38 Ohio St. 141. And see Little Miami R. Co. v. Naylor, 2 Ohio St. 235; Street Railway v. Cumminsville, 14 Ohio St. 523; Richards v. Cincinnati, 31 Ohio St. 506 ; Story v. N. Y. Elevated R. Co., 90 N. Y. 122. This court has, however, constantly acknowledged that McComb v. Akron, and cases following it, is a departure from the current of authority elsewhere; and, although these eases have not found favor with the judges delivering the opinions in Radcliff v. Brooklyn, 4 N. Y. 195 ; s. c., 53 Am. Dec. 357, 366, note; Hill v. Boston, 122 Mass. 344, 378; Alexander v. Milwaukee, 16 Wis. 247,256; Transportation Co. v. Chicago, 99 U. S. 635, we are entirely content with the doctrine, and would not change it if we could. But the justice of the Ohio rule, the firmness with which it has been adhered to for nearly half a eentutv, and the manner in 'which it is recognized and enforced in our statutes, have established the doctrine as a rule of property, and it is now too late to inquire whether McComb v. Akron was properly decided. In other states, the same rule is in part or wholly adopted by constitutional or statutory provision.
If we look alone to the allegations in the plaintiff’s petition, and the facts which the evidence tended to establish in his favor, a far stronger ground of recovery was shown than in either of the Ohio cases cited. Ye have seen that the roadway of the viaduct, in front of Cohen’s premises, *194 is forty-five'feet above the surface of Superior street; and it is averred, and there was evidence given tending to show that the viaduct, to some extent, shuts out light and air from his premises ; that by reason of the viaduct, dust and other obnoxious substances are constantly thrown on the premises of plaintiff and on persons passing along the street; that there is constant noises and jarring his premises, day and night, by reason of travel on the viaduct; that the viaduct has diverted travel from that part of Superior street between Water street and the river; and that by reason of the premises the value of the plaintiff's property and his rents have been reduced one-half. True, evidence was offered by the city tending to show there was no ground of recovery, and therefore it was for the jury to determine in whose favor the evidence preponderated. But while the title to the street is in the city, it must be remembered that the abutting owner has a special interest in the street, which the law will not only recognize but protect. The court below seemed to recognize this view as correct, but the learned judge who presided at the trial virtually directed a verdict for the defendant, as already stated, upon, the ground that plaintiff had failed to comply with the municipal code, section 564 (Rev. Stats., § 2315), and the question before us is whether in so directing the jury there was error.
Section 564 was as follows : “ Any .owner or owners of lots or lands bounding or abutting upon the proposed im-< provement, claiming damages therefor, shall file a claim, in writing, with the clerk of the corporation, setting forth the amount of damages claimed, together with a description of the property owned for which the claim is made, within two weeks after the expiration of the time required for the publication of said notice ; and all such owners as shall fail or neglect to file their claims for damages aforesaid, within the time aforesaid, shall be deemed to have waived the same and be forever barred from filing any claim or receiving any damages therefor.” Section 575 of the same code (Rev. Stats., § 2326) provided : “ No claimant for damages *195 shall commence any suit until he shall have filed a claim therefor with the clerk of the corporation, and sixty days shall have elapsed thereafter, to enable such corporation to appoint assessors to assess such damages, return the same to the proper officers, and sufficient further time shall have elapsed, not exceeding twenty days after the return of such appraisal, to enable the corporation to pay the assessment.” In the act of 1872 (69 Ohio L. 138, 3 Rev. Stats. 616) providing for the construction of the viaduct, it is provided (section 2) that “ owners of land or property of any kind, and lessees of said canal, claiming damages therefor, shall file a claim therefor, in writing, with the clerk of the corporation, as required by section 544 of said act; and said claims for damages shall be determined, and said work shall be done, in accordance with the provisions of the act to which this is supplementary, in so far as the same may be applicable.”
Manifestly there is a mistake in the figures “ 544,” as that section of the municipal code has no relation to filing claims, while section 564, as we have seen, does provide for filing such claims. Perhaps if that section alone made provision on the subject, we would have no difficulty in agreeing with the defendant that it was intended (People v. King, 28 Cal. 265; Tappan v. Tappan, 6 Ohio St. 64; Jenks v. Langdon, 21 Ohio St. 362; Com. v. Marshall, 69 Pa. St. 328; Sedg. Con. L. (2 ed.) 354; Hard. Stats. 241, 247); but the difficulty is that section 575, with which plaintiff complied, provides for filing claims, as well as section 564, and the plaintiff, conceding the mistake, insists that section 575 was intended, and not section 564. The difference between the sections, it will be seen, is marked, the former section (575) is much broader than the latter (564), and embraces not only the cases provided for by section 564, but apparently all claims arising from improvements — possibly others. But failure to comply with section 564, where that section is applicable, is a bar to any action; while failure to comply with section 575, though it would defeat the pending action, would not be a bar to another suit based on a claim *196 properly filed under that section, subsequently to the first suit.
If we were required to determine whether section 564 or section 575 was intended by the figures 544 in the act of 1872, the case would not be free from difficulty. Much may bo said in favor of either construction. We are of opinion we need not determine the question. Let it be conceded that section 564 was intended. Then we are of opinion that the case would not have been different, so far as lot owners are concerned, if section 564 had been in terms incorporated into the act of 1872, instead of such reference to section 564 — if that be the section — and hence only the owners of lots “ bounding or abutting upon the proposed improvement” were required to give such notice. No doubt many houses are on substantially the same plane as the roadway of the viaduct, and the real estate on which they are built are lots “ bounding or abutting upon the proposed improvementbut is that true of the premises of Cohen? We are clear that it is not. The street, as we have seen, is, in front of his house, forty-five feet below the roadway of the viaduct. That structure has furuished a new route for travel, and has largely diverted travel from that part of Superior street, and if Cohen desires to cross the viaduct he must travel nearly one hundred and thirty yards to get upon it. In no just sense is his property a lot “ bounding or abutting upon the proposed improvement.” In reality this was no more an improvement of Superior street than an elevated railway is an improvement of a street, but the viaduct furnishes an additional and substantially an exclusive route of travel to persons going across the river.
Doubtless it is true that the words bounding and abutting have no such inflexible meaning as to require the lots assessed or injured to touch the improvement, though the usual meaning of the words is that the things spoken of do actually adjoin. Without entering very much into the origin of the word abutting, it is sufficient to say that according to Latham it does not imply that the things spoken *197 of are “ necessarily in contact,” and to the same effect see Webster, Worcester, and Murray. In ascertaining the meaning of such word, of course regard must bo had to the intent of the law-maker, though it will be seen that the usual meaning conveyed is that the things spoken of touch or come together. Holt v. Somerville, 127 Mass. 408 ; Wakefield, ete., v. Mander, 5 C. P. Div. 248. So with the word bound. True, it was held in Richards v. Cincinnati, 31 Ohio St. 506, that “ where a strip of land ninety-one feet in width was dedicated for a street, and the municipal authorities improved a street thereon of the width of ninety feet, leaving one foot on one side thereof unused, except in sloping the embankments and excavations, the owners of property abutting on such foot of land are liable to be assessed as owners of property abutting on the improvement.” In that case, McIlvaine, J., said: “ It seems to us that, in order to exempt these proprietors from assessment as abutters on the improvement, it must appear that this intervening foot of land deprives them of full, free, and lawful access to the street improved ; but such deprivation could result only when the right and exclusive use thereto have reverted to the original dedicators and their heirs. If the public right to its use still continues, or if the right to the strip has vested absolutely iu the owners of lands abutting upon it, after abandonment by the public, then, in either case, their liability to assessment is certain. That this foot of land, before the improvement of the avenue, was subject to the use of the public, as part of a highway, is not disputed; and we are unable to find any ground upon which it can be held that such right in the public ha.s terminated. The greater part, if not the whole of this strip is utilized by the public in making slopes to the embankments and excavations of the street — a use quite as important and germane to public travel and convenience as if located in the center of the street.” And see Fass v. Seehawer, 60 Wis. 525.
It seems to us a j ust consideration of this reasoning leads to the conclusion that property situated as the plaintiff’s is with respect to the viaduct, is not lands “ bounding and *198 abutting upon the proposed improvement,” and that the court below erred in this respect. He is deprived, and in no merely technical sense, of the full, free, and lawful use of Superior street as it existed before the viaduct was constructed.
Judgment of the district court and court of common fleas reversed, and cause remanded to the court of common fleas for a new trial.