CUNNEEN and another, Appellants, vs. KALSCHEUER and others, Respondents.

*April 8—May 12, 1925.*
*December 12, 1925—January 2, 1926.*

*Highways: Discontinuance: Depriving owner of access to highway: Conveyances designed to prevent discontinuance: Effect.*

1. In the absence of evidence to the contrary, a contemplated change of the location of a highway, necessitating the laying out of a new portion and the discontinuance of a part of the old road, will be assumed to be beneficial to the public. p. 451.
2. Where a transaction takes place for the sole purpose of bringing a party within the shield of a statute and public interests are thereby sought to be adversely affected, equity will look to the substance and not the form and will declare the transaction void as to public interests. p. 454.
3. The fact that certain landowners might be deprived of access to a public highway will not, under sec. 80.02, Stats., prevent the discontinuance of the existing highway upon which the lands of such owners abutted, where their title was acquired solely to prevent the discontinuance. p. 451.

APPEAL from a judgment of the circuit court for Dane county: CHESTER A. FOWLER, Judge. *Affirmed.*

Action by plaintiffs as taxpayers and in behalf of other taxpayers to restrain the defendants from discontinuing a part of a certain highway in the town of Cross Plains and from laying out another highway across the land of John J. Farrell. As the case now stands, the only controversy

is as to the right of defendants to discontinue a part of the highway. It is claimed that this cannot be done because previous to its attempted discontinuance John J. Farrell deeded to each of his sons Leslie and Stanley five acres of land abutting on said highway. It is claimed that under the provisions of sec. 1265, Stats. 1921, now sec. 80.02, the owner of said five acres cannot be deprived of access to the highway. The section reads: "No town board shall discontinue . . . any highway . . . when such discontinuance would deprive the owner of lands of access therefrom to the public highway." The trial court found:

"Before the said petition was filed with said town clerk, and while the same was being circulated for signatures, John J. Farrell executed and delivered to his son Stanley Farrell a deed of five acres of land abutting on the portion of said road petitioned to be discontinued, and likewise deeded five acres of land so situated to his son Leslie. The deeds of said parcels were duly recorded. Each of said parcels would be without access to a highway except by passing over the land of John J. Farrell or other landowners in case the said existing highway should be discontinued as proposed by said petition. No valuable consideration was given by the grantees of said deeds. The parties to said deeds knew at the time the same were executed and delivered that said petition was being circulated and would soon be filed as aforesaid, and the purpose for which the same were executed and delivered and accepted and received was that thereby said parcels would be cut off from a highway as aforesaid if the said highway were discontinued as proposed, and that thereby the town board would have no jurisdiction to discontinue said existing road proposed to be discontinued and prevented from ordering such discontinuance."

It also appears in the record that Stanley Farrell brought *certiorari* proceedings in the superior court of Dane county to set aside the order discontinuing the highway, but the writ was quashed. Later he brought injunction proceedings to enjoin the discontinuance of the highway, but the

court found that by reason of his accepting the deed for the purpose and under the circumstances found by the trial court herein his suit was without equity.

John J. Farrell also instituted *certiorari* proceedings in the superior court to have the order set aside, but it appearing that he had appealed from the order and by the appeal had his damages increased, the court held that he could not later be heard to question the validity of the order.

The court found that the bringing of this action was first suggested to plaintiffs by John J. Farrell.

Judgment was entered dismissing the complaint upon the merits, and the plaintiffs appealed.

For the appellants there was a brief by *Gilbert, Ela, Heilman & Raeder* of Madison, and oral argument by *L. W. Raeder*.

For the respondents there was a brief by *Wm. R. Curkeet* and *A. T. Rogers*, both of Madison, and oral argument by *Mr. Curkeet*.

VINJE, C. J.    The plaintiffs urge a number of irregularities in the proceedings of the town board, each of which has been considered and deemed so immaterial as not to merit treatment in the opinion.    The defendants urge that the plaintiffs have no standing in court even though they are taxpayers; that as such they have shown no cause of action in their favor; and that they cannot be heard to vindicate the rights of Stanley, Leslie, or John J. Farrell, especially in view of the fact that John and Stanley have judgments against them upon the same issues, which judgments are of record in this case and stand unreversed.

We shall assume, without deciding the question, that plaintiffs may maintain the action and are entitled to assert and vindicate the equities of John J. Farrell and his two sons, the grantees in the deeds mentioned in the statement of facts.    Of course, if they have such right they must

stand in the shoes of the persons whose equities they assert. That brings us to the question whether, under the facts found, Stanley and Leslie Farrell have rights under their deeds which a court of equity should recognize where such rights come in conflict with public rights. It was upon this question that the court divided three to three when the case was first heard and decided and judgment affirmed. Mr. Justice Eschweiler was then sick and unable to participate. Upon his resuming work a rehearing was granted with the result that the court adheres to the result reached upon the first hearing.

The finding of the trial court that the deeds in question were made and received for the purpose of preventing the discontinuance of the road is established by the evidence without dispute. So the question is whether a conveyance, otherwise valid, made for the sole purpose of nullifying a statutory provision in which the public are interested, should be given force and effect in a court of equity to defeat the interests of the public; for it must be assumed as the record stands that the contemplated change of location of the road, necessitating the laying out of a new portion and the discontinuance of a part of the old road, was beneficial to the public.

Equity looks to substance and not to form. It is loath to lend itself to the accomplishment of a purpose different from that which the transaction usually imports. The conveyances in question were avowedly made for the purpose of injury to the public interest. It is true, as urged by plaintiffs, that the statute in question does not use the term *bona fide* owner, but there can be little doubt that such an owner was meant—one who would actually presently or prospectively be injured by lack of access to a highway. We have here no such case—but only a naked conveyance to prevent the discontinuance of the highway. Equity will not stamp such an act with its approval and permit the

parties to have the benefit of a shield that was intended only for *bona fide* situations.

As indicating to what extent courts have gone in looking beyond the form of a transaction where public interests are involved, the following cases cited by defendants are in point:

In *Fass v. Seehawer*, 60 Wis. 525, 19 N. W. 533, the facts were that the owner of a lot conveyed a strip one foot wide along the side of the lot which abutted upon a street in anticipation of a proposed improvement for the purpose of relieving the balance of the lot from an assessment therefor and with the understanding that it should be reconveyed upon request. The conveyance was made without consideration, and the court held that it was fraudulent and of no effect as to such assessment. It says: "The conveyance of the strip to Meyer was an open and avowed attempt on the part of the grantors to perpetrate a gross fraud on the law and on the taxpayers of the ward, and it would be a reproach and a disgrace to our jurisprudence if the courts, and especially a court of equity, should allow the attempted fraud to succeed." Plaintiffs urge that this case is different from the case at bar, and especially in that in the present case there is no agreement for a reconveyance. That is true. But the principle applies alike to both cases. In each there is an attempt made to avoid the effect of a statute, and for the sole purpose of avoiding it. And the fraud consists in indulging in a transaction whose sole purpose is to defeat the statute. It is quite immaterial in just what manner that is done. Here it is beyond question that the deeds were given and received for the purpose stated.

In *Morris v. Schallsville Branch of W. & R. R. T. P. R. Co.* 67 Ky. 448, it was held that a shanty put up and occupied for the sole purpose of preventing the condemnation of a stone quarry and not in good faith for a dwelling house

would not entitle the owner to the exemption of quarries within two hundred yards of a dwelling house as provided in ch. 103 of the Revised Statutes of Kentucky. It was held that to entitle the owner to this exemption the house must have been erected for the sole purpose of being used as a dwelling house and for no other purpose, or converted in good faith into a dwelling house.

In *Carris v. Commissioners,* 2 Hill (N. Y.) 443, the facts were these: There was a statute in force which forbade the laying out of roads or highways through buildings, etc., without the owner's consent. After the application for the laying out of a highway was made to the commissioners and notice given, the plaintiff moved a corn house within the limits of the contemplated new road. The commissioners laid out the road notwithstanding the corn house was moved within its limits. The court, through NELSON, C. J., after stating that the statute should be liberally construed to effectuate the end the legislature had in view, says:

"But the court in construing it should also guard against abuses of the protection thus afforded and see that it is not perverted to ends never intended by the legislature. It is manifest that the erection or removal of a building after an application for a highway, for the very purpose of defeating it, presents a case not within the mischief intended to be guarded against. It is the fault of the party himself if the road passes through his building, not the operation of the law or the act of the commissioners. To say that any fixture erected upon the route at any time before a road is actually laid out would enable an occupant at all times to defeat the law and prevent a highway through any part of his premises, is a proposition too absurd to be tolerated."

In *Stifel v. Brown,* 24 Mo. App. 102, the court held that a deed made of a part of a lot for the purpose of evading the payment of a special assessment thereon was fraudulent and void and would be disregarded in the collection of the tax.

In *Wood v. Hurley,* 29 S. Dak. 269, 136 N. W. 107, an owner conveyed a ten-foot strip of his property abutting on a street for the purpose of avoiding a tax. The court held that such a conveyance was fraudulent and void and did not defeat the collection of the tax.

In *Ballou v. Elder,* 95 Iowa, 693, 64 N. W. 622, it was held that the planting of trees and the placing of a stable and a corn-crib within the limits of a proposed highway after the commissioners had preliminarily viewed the proposed road was not in good faith and did not prevent the highway from being laid out as contemplated, though there was a statute forbidding the location of a highway through an orchard or through buildings.

*Ransom v. Burlington,* 111 Iowa, 77, 82 N. W. 427, furnishes another case where the conveyance of a fifteen-foot strip abutting a street to avoid an assessment was held to be fraudulent and void and did not operate to prevent the collection of the assessment on the whole lot. See, also, *Mitchell v. Board of Comm'rs,* 91 U. S. 206; *Shotwell v. Moore,* 129 U. S. 590, 9 Sup. Ct. 362.

The above cases differ in their facts, especially as to the manner and extent of the fraudulent transfer, but they all agree in holding that when a transaction takes place for the sole purpose of bringing a party within the shield of a statute and public interests are thereby sought to be adversely affected, equity will look to the substance and not to the form and will declare the transaction void as to public interests.

*By the Court.*—Judgment affirmed.