State ex rel. Flint vs. The City of Fond du Lac.

STATE ex rel. FLINT vs. THE COMMON COUNCIL OF THE CITY OF
FOND DU LAC.

CERTIORARI. *(1) To whom it runs. (2) When it lies.*
CITIES: CONSTITUTIONAL LAW: CONDEMNATION OF LAND. *(3) Service
of summons on special jury. (4) Certain charter provisions valid. (5)
Waiver by appeal. (6) Charter provisions for condemning land void
for failure to require personal notice to landowners.*

| 42 | 287 |
| 81 | 394 |
| 42 | 287 |
| 84 | 560 |
| 42 | 287 |
| 86 | 377 |
| 42 | 287 |
| 91 | 427 |
| 42 | 287 |
| 92 | 549 |
| 42 | 287 |
| 103 | 270 |

| 42 | 287 |
| 115 | 1 60 |
| 184 US | 437 |

1. The common council of Fond du Lac being a permanent body, which has legal control of all its records, and appoints the city clerk, a *certiorari* to bring up the acts and proceedings of that body touching the laying out of a new street, properly runs to it and not to the city clerk. *Milwaukee Iron Co. v. Schubel*, 29 Wis., 444, distinguished.
2. The appeal allowed by the charter of said city from the commissioners of appraisal to the council, and from the latter to the circuit court, where a lot-owner is dissatisfied with the amount assessed against his lot for damages or benefits resulting to it from a city improvement, does not raise in the circuit court the question of the validity of the proceedings for making such improvement, but only the question of damages or benefits; and *certiorari* will lie from that court to try the validity of such proceedings.
3. The policemen of said city have authority, under its charter, to serve the summons upon the special jury appointed to determine the necessity of condemning lands for a proposed public improvement; where two policemen certify that they have served such summons upon certain jurors named, it is presumed that the process was served on each juror by both officers; and such a service is good. But the question of valid service is immaterial where the record shows that all the jurors appointed actually attended and performed the duty required.
4. Provisions of the charter empowering the common council, upon presentation to it of the proper petition for laying out a street, to apply to the county judge for the appointment of a jury to determine the necessity thereof, etc.; to confirm the verdict of the jury so appointed; to appoint the commissioners who determine in the first instance the amount of compensation to be paid for the land taken, and the damages and benefits to be assessed against other lots; and to confirm, with or without modification, the report of such commissioners,— are not void on the ground that the council is or represents one of the parties to the proceeding, *where an appeal is given to the circuit court* from the decisions of the jury and of the council. *Hood v. Finch*, 8 Wis., 381, and *Lumsden v. Milwaukee*, id., 486, distinguished.

5. The objection that the lot-owner had no notice of the meeting of the commissioners of appraisal in such a case, is cured by his subsequently taking an appeal from their report.

6. Proceedings to open a new street in said city and to condemn land therefor, *held* void, because the charter makes no provision for giving the lot-owner who resides, or has an agent or tenant residing, in the city, a *personal notice* of the time and place for the appointment and meeting of the jury which determines the necessity of condemning his property. And this objection may be taken by one whose land is not condemned, but against whom an assessment for benefits, in the nature of a tax, is made.

APPEAL from the Circuit Court for *Fond du Lac* County.

On the petition of Robert Flint, a writ of *certiorari* was issued from the circuit court, addressed to the common council of the city of *Fond du Lac*, to bring up for review the acts and proceedings of that body touching the laying out of a new street between Forest and Second streets in said city, and all resolutions, ordinances, orders, votes, notices and other acts of said council, and of all other officers or agents of said city, relating in any way to said improvement, and all oaths taken by any officers or others, and all writs or other process issued in the course of said proceedings, together with the proofs of service of such writs, process, notices or other papers had or made therein, and also the proceedings and report of the commissioners appointed by order of said council to assess benefits and damages for the laying out of said street.

The return made to the writ included the following papers: 1. A petition in due form, by the requisite number of taxpayers of said city, addressed to the common council under date May 5, 1873, for the opening of said street, to be designated as Macy street. 2. An order of the common council, of the same date, granting the prayer of said petition. 3. A notice of said petition, etc., in the form required by the city charter, and signed by the city clerk; with proof of the publication of such notice as the charter required. 4. Proof of the filing of such petition and notice and affidavit of publica-

tion, with the county judge of Fond du Lac county, June 4, 1873; of the impaneling of a jury to determine whether it was necessary to lay out said street and take for that purpose the property described in said petition; and of the issue of a war-rant, under the hand and official seal of said county judge, addressed to the persons so appointed, and requiring them to appear and act as such jurors.   5. Proof of the service of such warrant, as follows: "We do hereby certify that we have this day served the within *venire* personally upon the following named jurors, by reading the same to each of them." [Signed by two policemen of the city of Fond du Lac, and followed by the names of the jurors so served.]   6. The oath of office, in due form, taken by said jurors.   7. The verdict of said jury, that the improvement was necessary, that it was necessary to take for that purpose the property specified, and that it was necessary to take private property without the consent of the owners.   8. An order of the common council, made June 5, 1873, confirming said verdict, and appointing three persons named as commissioners to view and examine the property proposed to be taken for said street, and to appraise the cost, expenses and damages to be paid to the owners thereof, and also to ascertain what lands or premises would be benefited by such taking, and assess and return to the common council, on or before July 7, 1873, the amount of damages and benefits so assessed.   9. Proof of the publication of said order by print-ing it in a newspaper of said city once in each week for three successive weeks, commencing June 7, 1873.   10. The oath of office taken by the commissioners named in said order.   11. Proof that the following notice, signed by the commissioners above mentioned, was published for two successive weeks, com-mencing June 7, 1873, in a newspaper of the city of Fond du Lac : "Notice is given to parties interested in the laying out and opening of a street fifty-eight feet wide from Forest street to Second street, the east line of which to begin on the south side of Forest street, 242 feet west of Main street, and run

thence south, parallel with Main street, in the city of Fond du Lac, on Monday, June 23, 1873, at 9 o'clock A. M., of that day, to hear any proofs, allegations or the testimony of any person interested therein, and to ascertain and appraise the cost, expenses and damages to be paid to the owners of the property proposed to be taken, and to assess the benefits of such proposed improvements to the lands and premises that will be benefited thereby."* 12. The report of said commissioners, in due form, to the common council, approved by the council July 21, 1873. In this report three lots of land owned by the relator were assessed for benefits, $100 each. 13. Extracts from the proceedings of the common council. From these it appears that the relator, on the 4th of August, 1873, gave the council written notice that he appealed from the apportionment and assessment of damages and benefits made by said commissioners. The 8th of August being fixed for the hearing of this and other like appeals, the relator, on that day, moved the council to "discharge the proceedings," for lack of jurisdiction. He also moved to vacate the report of the commissioners, so far as it assessed benefits against his lots, upon substantially the same grounds relied upon in the present proceeding, and also upon the ground that said assessment was injurious and oppressive. On the 18th of the same month, the common council made an order confirming the report of the commissioners.

The petition upon which the writ of *certiorari* in this case issued, states, among other things, that the relator had no notice of the time or place of meeting of the jury which determined the necessity for taking property for the street in question; and also that he had no notice of the confirmation of the verdict of said jury, or the appointment of the commissioners of appraisal.

After the return of the common council was filed, the city

*The notice is so given in the printed case. Some words are evidently omitted.—REP.

attorney moved the court to dismiss the proceedings, upon the grounds, 1. That the common council of the city of Fond du Lac had no capacity to sue or be sued. 2. That the city clerk had the legal possession of the papers, and the power to make returns. 3. That it did not appear that the council had exceeded its powers or jurisdiction. 4. That the relator had an ample remedy by appeal, and had appealed to the circuit court before this writ was issued, and his appeal was still pending. 5. That no part of the relator's lands had been taken, and, as to him, the taxing power only had been exercised, and his only remedy was by appeal from the assessment of benefits. The motion to dismiss was denied, and judgment was afterwards rendered in accordance with the relator's petition, declaring the proceedings of the commissioners and of the common council to be void, so far as they related to the assessments for benefits against the relator's lots, and enjoining the council, etc., from taking any further proceedings in relation to said assessments, or the issue of any special tax certificate against said lots for the amount thereof, etc.

From this judgment the common council appealed.

Robert Flint having died during the pendency of the cause, *Lillie Flint*, as executrix of his will, was substituted as a party in his stead.

*D. W. C. Priest*, for appellant, argued, 1. That if the writ would lie in the case at all, it should have been directed to the city clerk (who is by law the custodian of all the records and proceedings of the common council), or to the city. 2. That the relator had an ample remedy by appeal, first, to the common council, and next to the circuit court (Charter of Fond du Lac, ch. 501, P. & L. Laws of 1871); and that in such a case the writ of *certiorari* ought not to issue (1 Hill, 195, 674; 55 N. Y., 600; 33 Barb., 344; 44 id., 467; 65 id., 473; 20 How. Pr., 458; 12 Abb. Pr., 88; 17 id., 374, and note; 29 Wis., 444, 450), or at least not until it appears that the remedy by appeal is exhausted. 37 Barb., 176. 3. That the as-

sessment of damages and benefits upon the relator was an exercise of the taxing power, and, the persons whose lands were taken having made no complaint, the relator could not raise any question as to the exercise of the power of eminent domain. 41 N. Y., 137, and cases there cited; *Whiting v. S. & F. du L. R. R. Co.*, 25 Wis., 167, and cases there cited.

For the respondent, a brief was filed by *Shepard & Shepard*, and the cause was argued orally by *C. E. Shepard.* They contended, 1. That the writ was properly directed. (1) A *certiorari* should run to the body whose acts are to be reviewed, and which has the legal custody of the records. Vin. Abr., *Certiorari*, A., B.; Bac. Abr., *Certiorari*, A., F.; Fitzh. Nat. Brev., 245, A.; Com. Dig., *Certiorari*, A., 1, and C.; 2 Burr. Pr., 195; *Stone v. Mayor*, 25 Wend., 157, 167; *Starr v. Trustees*, 6 id., 564; *Lambert v. The People*, 7 Cow., 103; *Bogert v. Mayor*, id., 158; *Crawford v. Township Boards*, 22 Mich., 405. As illustrations of the practice, counsel further cited Com. Dig., *Certiorari*, C., and also A., 1; *Crosse v. Smith*, 3 Salk., 79; *Smith v. Commissioners of Sewers*, 1 Mod., 44; *Grenville v. College of Physicians*, 12 id., 386; *Arthur v. Commissioners of Sewers*, 8 id., 331; *King v. Justices*, 1 Barn. & Ad., 616; *King v. Battams*, 1 East, 298; *Queen v. Commissioners*, 1 Ad. & E. (N. S.), 467; *Queen v. Council of Lichfield*, 4 id., 893; *Queen v. Sevenoaks*, 7 id., 136; *Queen v. Mayor*, 8 id., 926; *Westoby v. Day*, 2 El. & B., 605; *Queen v. Justices of Durham*, 4 Best & S., 915; *Commissioners etc. v. Claw*, 15 Johns., 537; *Ex parte Mayor etc. of Albany*, 23 Wend., 277; *People v. Mayor, etc.*, 2 Hill, 9; *Hickok v. Trustees*, 41 Barb., 130; *People v. Board of Assessors*, 39 N. Y., 81; *People v. Police Board of New York*, id., 506; *Parks v. Mayor etc.*, 8 Pick., 218; *Dwight v. Springfield*, 4 Gray, 107. English cases in which the writ was issued to justices of the peace are in point, because such justices in England are judges of record by statute 34 Edw. I, c. 1 (Bac. Abr., *Justice of the Peace*), and

a clerk of the peace is appointed, who, under the authority of the *custos rotulorum*, has charge of the records. Com. Dig., *Justice of the Peace*, D., 4, 5. The rule to be deduced from all the authorities is this: The writ of *certiorari* should be directed to the body or officer whose action is to be reviewed, in all cases where the records thereof remain in its or his legal custody; but where they are in the custody of some independent body or officer, over which or whom the one whose acts are to be reviewed has no control, the writ must run to such independent body or officer. To the point that the common council had the legal custody of the records here in question, and that the custody and possession of the city clerk was merely that of their agent, counsel cited secs. 2 and 9, ch. III, and sec. 4, ch. V, of the city charter (P. & L. Laws of 1868, ch. 59). 2. That the writ was the proper remedy. (1) The province of the writ includes the proceedings of all judicial or *quasi* judicial bodies not acting according to the course of the common law; and the superior court can at least inquire into all irregularities apparent on the face of the record, as well as into the jurisdiction of the subject matter. Bac. Abr., *Certiorari*, B.; *Stone v. Mayor* and *People v. Assessors, supra; Milwaukee Iron Co. v. Schubel*, 29 Wis., 444. (2) The proceedings here sought to be reviewed were judicial. Ch. 59, P. & L. Laws of 1868, subch. XII; P. & L. Laws of 1871, ch. 501, §§ 6–9; *Steele v. Dunham*, 26 Wis., 393; *Parks v. Mayor*, 8 Pick., 218; *Weaver v. Devendorf*, 3 Denio, 117; *People ex rel. Moore v. Mayor*, 5 Barb., 43; and cases under preceding point. (3) The right to this writ is not affected by the provision for an appeal from the council to the circuit court. (a.) Express words are necessary to take away the power to issue this writ. *Rex v. Jukes*, 8 Term, 542; *Rex v. Moreley*, 2 Burr., 1040. (b.) Appeal and *certiorari* are distinct remedies, and have dissimilar objects. *Mahr v. Young*, 13 Wis., 634; *Wood v. Randall*, 5 Hill, 264. (c.) An appeal presupposes the proceedings valid, and only

disputes the amount of benefits; but the objection here is to the validity of the proceedings. 3. That the assessment was properly quashed. (1) The council had no jurisdiction, because it was acting judicially in a matter in which it was or represented an interested party. [To the point that the action of the council, and of the jury and commissioners appointed through or by it, in determining whether the taking of land for streets is necessary, and in fixing the amount of compensation and benefits, is judicial, counsel cited Cooley's Con. Lim., 90–92, and the authorities referred to above under 2 (2)]. Judicial acts by interested parties are always null. *Dr. Bonham's Case*, 8 Rep., 114, 118; *City of London v. Wood*, 12 Mod., 669, 687; *Hood v. Finch*, 8 Wis., 381; *Lumsden v. Milwaukee*, id., 485; *Seifert v. Brooks*, 34 id., 443; *Queen v. Justices*, 18 Ad. & E., N. S., 416; *Reg. v. Allan*, 4 Best & S., 915; Cooley's Con. Lim., 175, 410–413. (2) The proceedings are void for lack or insufficiency of notice in respect to (a) the confirmation of the verdict of the jury; (b) the appointment of commissioners; (c) the action of the commissioners; (d) the confirmation of the commissioners' report. *Seifert v. Brooks, supra;* 8 Wis., 381, 485. (3) Several other defects invalidate the proceedings. The jury were not legally summoned. City policemen cannot make official return of service of such process, the same not being in any action in any court; nor can policemen execute such process; nor can process be returned or sworn to as served by *two* officers, without pointing out what jurors were served by each. Again, neither the commissioners, nor the common council when the commissioners' report comes in, have any power to swear witnesses, without which they cannot properly exercise judicial functions in the investigation of facts; and their assumption of the power does not alter the legal effect. *Lumsden v. Milwaukee* and *Seifert v. Brooks, supra.*

COLE, J.    I. The objection that the writ of *certiorari* was

improperly directed to the common council instead of the city clerk, is untenable. It was the acts and proceedings of the common council relative to the laying out of the street in question, which were sought to be reviewed. The common council, under the city charter, is a permanent body; has the legal control of all its records and papers; appoints the city clerk; and could therefore make return to the writ. (See charter, ch. 59, P. & L. Laws of 1868.) It is not like the case of *Milwaukee Iron Co. v. Schubel, Town Clerk*, 29 Wis., 444. There the object of the writ was to review the proceedings of the board of review, which was not a permanent body, but which, after performing a specified duty, dissolved, leaving its records in the control of the town clerk. The town clerk, therefore, alone had the legal custody and possession of the records of the board after it had ceased to exist, and could make return of its proceedings in the matter. This fact distinguishes the cases, and shows that a necessity existed for directing the writ to the clerk in that case, which does not exist here.

II. It is further insisted on the part of the city, that the writ should not have been issued in the first instance, or should have been dismissed by the circuit court on the motion made, because the relator has under the charter an appeal, which affords an ample remedy, and which she has already availed herself of. The charter in substance provides, that where a person feels aggrieved by an award made by the commissioners assessing or apportioning the benefits and damages of the proposed improvement, he may appeal therefrom to the common council for a review or a rehearing. If dissatisfied with the decision of the common council in the matter, or if the common council fail for twenty days to decide the appeal, then an appeal is given to the circuit court for a trial of the question of damages and benefits. Sec. 8, ch. 501, P. & L. Laws of 1871. But on the trial of the appeal in the circuit court, the investigation is confined or re-

stricted to the question of damages and benefits, and it would not be proper to go into any other inquiry.  The validity or regularity of the proceedings of the common council would not be a question open on the appeal.  *Pier v. The City of Fond du Lac*, 38 Wis., 470.  It is therefore apparent that the questions necessarily arising on this writ could not be considered and determined on the trial of that issue.

III.  This brings us to the inquiry whether the circuit court properly vacated the proceedings of the commissioners and common council in relation to the assessment of the real estate of the relator for benefits on account of the opening or extending of Macy street.

The validity of these proceedings is assailed on various grounds.  In the first place, it is said that the jury, to determine the necessity of laying out the street and of taking private property for that purpose, was not legally summoned.  It appears that the precept issued by the county judge was personally served upon the jurors by two policemen of the city; and it is claimed that these officers could not execute such a process.  This is a mistake.  The policemen of the city are expressly clothed with all the common-law and statutory powers of constables.  Ch. 124, P. & L. Laws of 1867, p. 276.  Presumably the process was served upon the jurors by both officers.  While a double service was unnecessary, it certainly would not vitiate the execution of the process made by either officer.  Moreover this question is quite immaterial, in view of the fact that the twelve jurors appointed by the county judge actually attended and acted in the matter.  The object of the process was to bring these persons together for the performance of a specified duty.  And so long as they met and performed that duty, it is of no importance whether they were legally summoned or not.

Again, it is argued that the common council, in the proceeding of opening the street, was identified in interest with the public it represented — was the active adversary party against

those who were damaged and those who were benefited by the improvement, while under the charter it acted judicially in the matter. It is said that it really stood in the position of a judge trying his own cause, which is a violation of the first principle of justice. This criticism, we think, is not well founded. It is true, when the power of the common council is called into exercise on the presentation of the proper petition, then the council takes all subsequent steps. The jury is appointed by the county judge on its application, and the council confirms by an order the return of the jury. It appoints the commissioners *ex parte*, whose duty it is to view and examine the premises mentioned in the petition; to ascertain and appraise the damages or compensation to be paid the owner of the property proposed to be taken; also to determine what lands will be benefited, and to assess the amount of damages and benefits. Ch. 12 of the charter of 1868. The common council, where no appeal is taken, or, if taken, whether the report of the commissioners is modified or not, confirms the the report, and orders the damages to be paid. Such one-sided proceedings, it is said, are void under the decisions of *Hood v. Finch*, 8 Wis., 381, and *Lumsden v. The City of Milwaukee*, id., 486. But an important distinction exists between those cases and the one before us. There no appeal was given to the circuit court from the award of the jurors and action of the common council on the question of damages, but such action was conclusive and final upon the rights of the parties interested therein. Here, however, an appeal is given to the circuit court to try the question of damages and benefits; and this remedy would seem to afford ample protection, to a person aggrieved by the award, against any oppression or injustice on the part of the common council or any of its agents.

It is further objected, that the relator, or her testator, had no notice of the meeting of the commissioners for the apportionment and assessment of the damages and benefits on his property. But he took an appeal from the report of the com-

missioners, which, we think, operated to cure that defect in the proceedings. It is analogous to a general appearance in a cause where there has been a defective service of judicial process.

IV. But we think the proceedings were fatally defective because the charter makes no provision for giving a proper notice to the owner of the time and place for the appointment and meeting of the jury which determines the necessity of taking his property. Where the owner is known, and lives, or has an agent or tenant living, within the municipality, a personal notice of these steps is essential, and must be given, or the proceedings will be void. The case of *Seifert v. Brooks*, 34 Wis., 443, is a direct authority upon this point. Where the owner is unknown, or is a nonresident, notice by publication may be sufficient. Now, the charter only provides for giving notice to the owner by publication in the official paper of the city for two successive weeks, at least once in each week, that application will be made to the county judge, on a day named, for the appointment of twelve jurors to view the premises, etc. On proof of the publication of such notice, the judge is authorized to appoint twelve reputable, disinterested freeholders, residents of the city, who are in no wise of kin to any person who has an interest therein, to serve as jurors. The return to the writ shows that the city clerk caused to be published a general notice of the filing of the petition in his office, asking for the opening of the street and giving a description of the street desired to be opened. This was all the notice given on the subject or provided for in the charter, and we think it was clearly insufficient. The owner of the land proposed to be taken, when known and living within the city, should have personal notice of the time and place of the appointment of the jury and when they will meet to view the premises, in order that he may object to the selection of any unfit person on the jury, and have a full opportunity to be heard before them on the question of necessity. In so important a

State ex rel. Flint vs. The City of Fond du Lac.

matter as depriving a citizen of his property, every act or step in its nature final should only be done or taken after personal notice to him, where such notice can be given. It is true, the property of Mr. Robert Flint was not taken for the street, but was assessed for benefits resulting from the improvement. Such an assessment of benefits is doubtless an exercise of the taxing power, as contended for by the counsel for the city. Still, the relator is in a position to object that the proceedings for the condemnation of the land were illegal and void. For the benefits to her property consequent upon the opening of the street vitally depend upon the question whether the power of eminent domain has been properly exercised in procuring the right of way. This seems quite obvious.

It follows from these views that, on account of the failure of the charter to provide for the giving of personal notice to the owner of the property, of the time and place of the appointment and meeting of the jury to inquire into and determine the necessity, the proceedings were void, and were properly vacated by the circuit court.

Before dismissing the case finally, we feel it our duty to call attention to sec. 11, ch. 12 of the charter, and to suggest a grave doubt whether it secures to the owner whose property is taken, the compensation which the constitution requires. A mere suggestion of this doubt would seem to be all that is necessary on the point, in view of the decisions of this court, which must be familiar to the profession.

*By the Court.* — The judgment of the circuit court is affirmed.