E. V. TUTTLE, Plaintiff, v. M. E. HUTCHISON et al., Defendants.

CERTIORARI:  Writ—To Whom Directed—Contempt—Intoxicating
1   Liquors.  A writ of certiorari, to review contempt proceedings
    heard by the *court*, for violation of the intoxicating liquor stat-
    utes, should be directed to the presiding judge, by name, who heard
    and decided the proceedings.

CERTIORARI:  Writ—Erroneous Writ—Appearance—Effect.  Ap-
2   pearance to and compliance with a writ of certiorari cures errors
    of form therein.

CERTIORARI:  Writ—Defective Writ—How Reached.  A defective
3   writ of certiorari should be met by motion to dismiss, not by
    objection to the jurisdiction of the court to which return is made.

INTOXICATING LIQUORS:  Contempt—"Pleadings" Authorized.
4   Answers, replies, confessions and avoidances, are unknown to
    "contempt" proceedings to punish a *violation of an injunction*
    against the unlawful sale, etc., of intoxicating liquors.  The only
    papers *permitted* or *authorized* to be filed in such proceedings
    are:
        1.  An information, under oath, setting forth the violation, and
        2.  At the option of the accused, a written explanation, under
    oath, of his conduct.
        On these, and these alone, the court must proceed to find the
    very truth of the charge, unfettered by the ordinary rules of
    pleading.  (Secs. 2405, 2407, 2424, 4465, 4466, Code, 1897.)

**APPEAL AND ERROR: Decisions Reviewable—Constitutional Questions—Non-Appeal by Successful Party.** Constitutional questions ruled against a non-appealing litigant will not be considered on an appeal by the opposite party.

**INTOXICATING LIQUORS: Contempt—Proceeding to Establish—Discharge by Court—Appeal—Jurisdiction.** Proceeding to punish for contempt for violation of liquor injunction may be reviewed by certiorari, whether defendant be adjudged guilty or innocent. (Secs. 2407, 4468, Code, 1897.)

*Certiorari from Carroll District Court.*—M. E. Hutchison, Judge.

Tuesday, March 23, 1915.

Rehearing Denied Tuesday, January 18, 1916.

Certiorari proceedings from a finding of the district court of Carroll County adjudging respondents Judge and Bunting not guilty of a contempt of court in selling or keeping for sale intoxicating liquors contrary to law.—*Annulled* and *Remanded.*

*M. S. Odle,* for plaintiff.

*L. H. Salinger* and *Ralph Maclean,* for defendant.

Deemer, J.—I. In a proceeding in the district court of Carroll County, Joe Judge and M. Bunting were charged with contempt in having violated a decree of injunction previously entered by that court against the unlawful sale of intoxicating liquor. The contempt proceeding, which was a second one arising out of the original case, was commenced October 1, 1912. Hearing was had in the district court on December 6, 1912, Hon. M. E. Hutchison being the presiding judge; and on January 4, 1913, it being one of the days of the regular term of court, judgment was entered holding that, under the pleadings and proof, the defendants, Judge and Bunting, were not guilty of contempt, and they were discharged. Following this action, an application for a writ of certiorari, directed to "M. E. Hutchison, Judge of the District Court of Iowa, in and for the Sixteenth District", was made to and granted by

a member of this court, and a transcript of the records of the lower court was certified to this court by Judge Hutchison.

In this court, there have been filed, in the name of M. E. Hutchison, Judge, objections to the jurisdiction of this court to entertain or decide this case, urging, among other reasons, that the record shows that the action sought to be reviewed was had and done before the district court, and no writ has been applied for or issued to that tribunal, but to the judge thereof; and the record shows that M. E. Hutchison, as such judge, has never entertained the proceedings complained of, nor made the order which is now sought to be reviewed.

1. CERTIORARI: writ: to whom directed: contempt: intoxicating liquors.

II. The office of the writ of certiorari is to bring before the reviewing court the records of an inferior tribunal, board or officer exercising judicial functions, when it is alleged that proper jurisdiction has been exceeded. Code Section 4154. In cases like the present one, arising out of an alleged violation of an injunction against the sale of intoxicating liquor, the only method of review is by certiorari. *Currier v. Mueller*, 79 Iowa 316. While Code Section 2407 provides that, in case of the violation of an injunction issued under the act regulating the sale of intoxicating liquor, the court or, in vacation, a judge thereof, may summarily try and punish the offender, it by no means follows that "the court or judge thereof" are interchangeable terms; for the jurisdiction of the latter in such matters attaches only in vacation. The trial in the proceedings which are now sought to be reviewed was in the district court in term time, and Judge Hutchison was its presiding officer. It is true that certiorari proceedings are, as said in *Tod v. Crisman*, 123 Iowa 693, 702, "leveled at the tribunal, board or officer alleged to have exceeded the jurisdiction or authority conferred by law, and ordinarily, these are to be deemed proper parties defendant of record"; it is, nevertheless, everywhere recognized that every process, especially every writ of certiorari, must run against and act upon the person. As said in *Chambers v. Lewis*, 9 Iowa 583, "The

writ does not act upon the officer as such. Though the command be to do or to correct an official act, yet it is directed to the person."

In *State v. Weber*, (Minn.) 37 N. W. 949, objection was raised that the writ issued to the judge, instead of to the court, and of this, the opinion says:

"The objection . . . goes only to a matter of form, and is not well taken. Where there is a proceeding in a court and it has only one judge, he has the direction and control of the record; and the mandate of this court requiring him, as such judge, to certify the record and proceeding to this court is, in substance and effect, a direction to his court to so certify."

The force of the opinion is not minimized by the fact that there are two judges of the district court in the district of which Carroll County is part, for the reason that the district court in session in any county of this state consists of but one judge (Code Section 241), except, perhaps, in some counties having two or more judges. In the latter counties, it is apparent that a writ running to the district, without reference to the presiding judge of the court, would be likely to accomplish nothing, save, perchance, it might fall into the hands of the proper judge,—the judge whose action as a court was challenged. The general practice in this state, since the opinion was pronounced in the *Chambers* case, *supra*, has been to issue such writs to the district judge presiding, by name. See *Fagg v. Parker*, 11 Iowa 18; *Allen v. Church*, 101 Iowa 116; *Lloyd v. Spurrier*, 103 Iowa 744; *Bardes v. Hutchinson*, 113 Iowa 610; *Vette v. Byington*, 132 Iowa 487; *Le Grand v. Fairall*, 86 Iowa 211; *Callanan v. Lewis*, 79 Iowa 452; *Butterfield v. Treichler*, 113 Iowa 328; *U. S. S. Voting Machine Co. v. Hobson*, 132 Iowa 38; *Berkey v. Thompson*, 126 Iowa 394; *Oyster v. Bank*, 107 Iowa 39; *Davis v. Preston*, 129 Iowa 670; *Coffey v. Gamble*, 134 Iowa 754; *Denmead v. Parker*, 145 Iowa 581; *Boynton v. Church*, 148 Iowa 197; *Russell v. Anderson*, 141 Iowa 533; *Hemmer v. Bonson*, 139 Iowa 210; *Brown v.*

*Powers,* 146 Iowa 729; *Lewis v. Brennan,* 141 Iowa 585; *Dugane v. Smith,* 140 Iowa 674; *Sawyer v. Hutchinson,* 148 Iowa 449. As sustaining the practice here adopted, see *County of Brown v. Land Co.,* 38 Minn. 397.

In *State ex rel. v. City of Milwaukee,* 57 N. W. 45, the Supreme Court of Wisconsin, in speaking of a writ of certiorari which had been directed to the city of Milwaukee and to George R. Mahoney as city clerk, said:

"By Section 1, c. 4; of the city charter of Milwaukee, it is provided that 'the municipal government of the city shall be vested in the mayor and common council', and the common council is a continuing body (Section 2, c. 4, City Charter) and has the control of all its records and papers, while the city clerk has the custody thereof, and of the corporate seal, and is a mere ministerial officer, without any judicial or quasi judicial power. It is a general rule that the writ of certiorari cannot go to a mere ministerial officer, save in exceptional cases, as where the body or board whose acts are sought to be reviewed is not a continuing one, or has ceased to exist, and such ministerial officer has the proper custody of the record or proceeding sought to be reviewed. Such was the case of *Iron Co. v. Schubel,* 29 Wis. 444, explained in *State v. Common Council of Fond du Lac,* 42 Wis. 287, 294. The latter was a case identical with this, in respect to the direction of the writ, and conclusively shows that in this case the writ should have been directed to the common council, and not to the city clerk. The fact that the writ is directed also to the city as a corporate body will not obviate the objection. The city in its corporate capacity has no judicial or quasi judicial power in the premises, and for that reason, the writ should not have been directed to it. The error of directing such a writ to the corporation in street cases was noticed and held fatal in *Bogert v. Mayor,* etc., 7 Cow. 158; *In re Mt. Morris Square,* 2 Hill 14. The authorities are very numerous to the effect that, where the acts of a corporate board or of corporate officers are the proper subject of review by writ of certiorari, the

writ must be directed to such board or officers, and not to the corporation. 5 Wait, Pr. 471; Mechem, Pub. Off., Secs. 1001, 1007, and cases cited; *In re Mt. Morris Square,* 2 Hill 14.''

See, also, *Commonwealth v. Winthrop,* 10 Mass. star page 177.

Our statute provides for the service of the writ upon the defendant, and such defendant must perforce be some person upon whom service may be made. If it runs to the district court alone, upon whom is service to be made?

2. CERTIORARI: writ: erroneous writ: appearance: effect.

Manifestly not upon the clerk, for he is a mere ministerial officer. *Young v. Crane,* (N. J.) 51 Atl. 482; *State v. McGovern,* (Wis.) 76 N. W. 593. If upon anyone, it must, therefore, be the judge; for none of the other officers of the court have anything to do with the proceedings. Moreover, it is the doctrine of this court that, even though the form of the writ be erroneous, yet if, in response to it, defendant brings for review all the facts before the court which were considered, no prejudice can result on account of such error. *Richman v. Board,* 70 Iowa 627. And an appearance to the writ cures any defects therein or in the service thereof. *Remey v. Board,* 80 Iowa 470. Authorities may be found, holding that such a writ should be directed to the court, and not to the judge, when an act of the court is to be reviewed. See *Onesti v. Freelon,* 61 Cal. 625; *Frazer v. Freelon,* 53 Cal. 644; *Livingston v. Livingston,* 24 Ga. 379; *People v. Brennan,* 79 Mich. 362. These cases seem to be based upon statutes; but if not, we should not be disposed to follow them in this case, for, in any event, no prejudice resulted.

Moreover, the only remedy available to defendant was a motion to quash the writ or for a dismissal thereof, and not by objection, such as defendant has here interposed. See Standard Encyclopedia, Vol. 4, pages 934 and 935; 4 Encyc. of Pleading and Practice, 241; 6 Cyc., 813.

3. CERTIORARI: writ: defective writ: how reached.

II. Coming now to the merits of the case,

the contempt proceedings which we are asked to review were commenced by the filing of an affidavit in the district court of Carroll County, in a case entitled E. V. Tuttle, Plaintiff, E. V. Tuttle, Relator, v. Joe Judge and M. Bunting, in which it was stated that, in a case of the same title, defendants were, on the 8th day of December, 1908, enjoined and restrained from selling or keeping for sale intoxicating liquors illegally in Carroll County or at any place within the judicial district; that, since October 3, 1911, the defendants had kept and sold intoxicating liquors in said county and did, on October 4, 1911, in violation of law and of the decree aforesaid, sell intoxicating liquors, to wit, whiskey and beer, to various parties, and did therein keep intoxicating liquors with intent to sell the same illegally in the city of Carroll. Pursuant to the affidavit, a warrant of arrest issued, and defendants were ordered to show cause why they should not be punished for contempt. Having been brought before the court, the defendants filed what they denominated an "answer to the information", the material parts of which are as follows:

"1.   They admit that on December 8, 1908, they were enjoined from the illegal sale of intoxicating liquors as in the information averred.

"2.   They admit that between the 3rd day of October, A. D. 1911, and the 29th day of December, A. D. 1911, they sold intoxicating liquors on the premises described as Lots 1 and 2 in Block 21, in the city of Carroll, Iowa.

"3.   They aver, however, that such sales were made under the following circumstances:

"4.   That on the 19th day of December, A. D. 1910, there was duly filed with the auditor of Carroll County a written statement of general consent that intoxicating liquors might be sold in the said county of Carroll and in the city of Carroll situated therein; that said written statement was signed by more than 65 per cent of all the legal voters residing in said county, as shown by the poll lists of the last general election, and so signed by 82 per cent of all legal voters residing within

the township of Carroll and the city of Carroll, as shown by the poll lists of the last preceding general election; and the territory embraced within the limits of said city comprise all the territory embraced within the township of Carroll.

"5. That thereafter and on the 3rd day of January, A. D. 1911, the said written statement—ten clear days' notice of intention to make such canvass having been previously published by the auditor of said county in the official newspapers of said county—was publicly canvassed by the board of supervisors of said county at a regular meeting of said board, and said finding was then duly entered of record; it being then found and entered of record by said board that said statement had been signed as alleged in the preceding paragraph and that the same was sufficient as to said city and township of Carroll, and as to said county.

"6. That said finding was never appealed from, nor has the consent thus given been withdrawn or revoked in any manner whatsoever.

"7. These defendants aver that at a meeting of the council of the city of Carroll held on the 28th day of June, A. D. 1911, the said council duly passed and the mayor of said city signed a resolution giving consent to these defendants 'to sell intoxicating liquors in accordance with law, and the ordinances of the city', in a building situated on lots 1 and 2, in block 21 of said city, 'from the 1st day of July, A. D. 1911, until such consent is revoked or withdrawn as by law provided.'

"8. That thereafter, and at 12 o'clock midnight of June 30, A. D. 1911, and at the close of such day, and at the beginning of the 1st day of July, A. D. 1911, these defendants filed in the office of the auditor of Carroll county, a duly certified copy of such resolution.

"9. That at said time these defendants filed in the office of the said auditor the written consent of all resident free holders owning property within fifty feet of the building described in such resolution.

"10.　That at said time these defendants filed with said auditor a bond in the sum of $3,000.00, conditioned as required by Paragraph 3 of Section 2448 of the Code; that the defendants signed said bond by themselves as principal; and that the same was signed as sole surety by a surety company authorized to do business in the state of Iowa by its laws, which surety company qualified in double the amount of said bond, and said bond was at said time duly approved by the clerk of the district court of Iowa in and for Carroll county. That said bond was by its terms to be and remain in force from July 1st, 1911, until the 1st day of July, A. D. 1912.

"11.　That at said time the defendants filed with said auditor a list of all persons employed about the place where they were conducting their said business.

"12.　That on the 30th day of June, A. D. 1911, and before the close of said day, these defendants paid to the treasurer of Carroll county the sum of $150.00, being the quarterly tax imposed on said business, and these defendants aver that such tax has ever been paid in advance in the same manner, and as by the said law required, and that the tax for the quarter beginning October 1st, 1911, and ending January 1st, 1912, was on the 29th day of September, A. D. 1911, so paid.

"13.　That these defendants have not carried on said business within three hundred feet of any church building, schoolhouse, or cenemtery, nor within one-half mile of any place where any agricultural fair was being held, or within one-half mile of any permanent military post or reservation established within the state of Iowa by the United States.

"14.　That neither of the defendants, nor any person carrying on their said business has at any time since the commencement of said business held any township, town, city or county office.

"15.　That the selling or keeping for sale of such liquor was carried on in a single room having but one entrance or exit, and that opening upon a public business street, that the

bar where liquors were furnished therein was in plain view of the street, unobstructed by screens, blinds, painted windows or any other device, and that there were no chairs, benches nor any other furniture in front of such bar, and only such behind the same as was necessary for the attendants.

"16. That a list of the names of all persons employed about said place was on file with the auditor of said Carroll county, during all of said period, and that no persons were permitted behind said bar other than those names so listed.

"17. That there were not during said period any obscene or improper decorations, inscriptions, placards, or any such thing in the place.

"18. That the defendants, and all persons employed by them about the place during such period were qualified electors of the city of Carroll, and of the township of Carroll, and of the state of Iowa.

"19. That no person, firm, association, corporation, and no officer, stockholder, agent or employee of such firm, association or corporation, engaged in the manufacturing, brewing, distilling or refining of intoxicating liquors, was, at any time, during the period covered by this plea interested or engaged, directly or indirectly, in the retail of intoxicating liquors sold in said business of the said defendants, or operated or leased any building, erection or place used for the keeping for sale or sales, of such liquors at retail in the business of the defendants or furnished the license bond required by law or paid for such bond, or guaranteed any bond of the defendants given by the defendants for the purpose of engaging in the sale of intoxicating liquors on said premises during said period.

"20. That the consent granted these defendants by the council of the said city of Carroll, on the 28th day of June, A. D. 1911, was one of six granted at the meeting referred to but was the first of such six so granted."

They also averred:

"That they are citizens of the state of Iowa and of the

United States, and were such at the commencement of the action, and as an additional and complete defense say:

"That so much of the statutes of Iowa as provides for the granting of an injunction restraining the illegal sale of intoxicating liquor, and as punish violation of such injunction by contempt proceedings, and especially 142, Acts 33 General Assembly, and that part of Title 12, Chapter 6, of the Code of Iowa, to wit: Secs. 2405, 2406, 2407, 2408, 2409, 2410, 2424 and 2429 are void, for the following reasons:

"1.   Under said statutes, one who has been acquitted of violating an injunction in contempt proceedings, charging such violation, may, in violation of both the state and federal constitution, be again put in jeopardy for the same offense, and, on such retrial, convicted and punished.

"2.   Under said statutory enactments, one who has been acquitted of a contempt of court for violating such injunction, may be arraigned for punishment, and an attempt made to punish him because his acquittal has been annulled in a proceeding to which he was not a party, and in which he did not appear.

"3.   Said statutes violate Sec. 1, Art. 1, of the Constitution of Iowa, in that they interfere with the rights guaranteed in said constitutional provision, including the right to acquire, possess and protect property.

"4.   Said statutes are repugnant to and in violation of Sec. 9, Art. 1, of the Constitution of Iowa, in that they deprive the defendant of his property and liberty without due process of law.

"5.   They are in violation of Sec. 6, Art. 1, of the Constitution of Iowa, which requires that all laws of a general nature shall have uniform operation.

"6.   Said statutes are void in that they deprive defendants of the equal protection of the laws, in violation of the Constitution of Iowa, and the 14th Amendment to the Constitution of the United States.

"7.    Said statutes are in violation of Sec. 6, Art. 1, of the Constitution of Iowa, which requires that the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms shall not apply equally to all citizens.

"8.    Said statutes are repugnant to Sec. 2, Art. 4, of the Constitution of the United States, which provides that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states.

"9.    The same are repugnant to the 14th Amendment of the Constitution of the United States, which provides that no state shall make or enforce any law, which shall abridge the privileges or immunities of citizens of the United States."

When the case came on for trial it was conceded, subject to certain objections of irrelevancy and immateriality that:

"The defendants were at the time of the filing of this information, and prior thereto, and up until about the 1st day of January, 1912, engaged in the sale of intoxicating liquors as saloon keepers in the city of Carroll, Iowa, on the premises alleged in the information, and that they were partners in said business at said time."

And it was further conceded, subject to the same objection:

"That the city of Carroll has a population of about three thousand nine hundred at the last United States census, and that there were in the city of Carroll from July 1st, 1911, until January 1st, 1912, six saloons operating within the said city of Carroll."

It was admitted that defendants are citizens of the state of Iowa and of the United States, and were at the time of the commencement of this action. The following record was then made:

"It is stipulated and agreed by and between the parties hereto as follows: The relator admits Paragraph Four of defendant's answer; also admits Paragraph Five; also Paragraph Six; the relator admits Paragraph Seven of defend-

ant's answer, subject to his objection as being immaterial and irrelevant for the reason that it appears that the said resolution of consent was given prior to the adjudication of guilt of contempt of these same defendants on November 18th, 1911; and the relator admits Paragraph Eight of defendants' answer, subject to the same objection as to Paragraph Seven; he admits Paragraph Nine, subject to the same objection as to Paragraph Seven; admits Paragraph Ten, subject to the same objection as offered to Paragraph Seven; he admits Paragraph Eleven, subject to the same objection as to Paragraph Seven; admits Paragraph Twelve, subject to the same objection as to Paragraph Seven; admits, Paragraph Thirteen; admits Paragraph Fourteen; admits Paragraph Fifteen; admits Paragraph Sixteen; admits Paragraph Seventeen; admits Paragraph Eighteen; admits Paragraph Nineteen; plaintiff admits Paragraph Twenty, subject to his objection as being immaterial and irrelevant.''

The original decree of injunction was then introduced in evidence. The record then shows the following:

''*Mr. Odle:* Plaintiff and relator offers, introduces and reads into evidence the contempt order in the case of E. V. Tuttle, Plaintiff and Relator, v. Joe Judge and M. Bunting, defendants, found on Page 295 of District Court Record Nineteen of Carroll County, Iowa.

''*Mr. Salinger:* Dated when?

''*Mr. Odle:* Dated the 18th day of November, 1911, and spread upon the records the 2nd day of December, 1911.

''*Mr. Salinger:* Objected to as being irrelevant to any issue joined and immaterial.

''*The Court:* Overruled. (Defendants except.)

''*Mr. Salinger:* I would like to have you reserve your ruling on the objection until you hear me, it is not a mere formal objection.

''*The Court:* I will reserve the ruling on that until the case is submitted.''

The contempt order, which is not denied in the abstract

filed, was made Oct. 16, 1911, and it found: ''defendants guilty of contempt of court; that Joe Judge and M. Bunting have violated said injunction, since the 15th day of December, 1910, by selling and keeping for sale intoxicating liquors and maintaining a nuisance contrary to law in a building in this judicial district of Iowa. . . . It is therefore ordered, adjudged and decreed by the court that the defendants Joe Judge and M. Bunting are in contempt of court for the violation of said injunction aforesaid, and it is further ordered, adjudged and decreed by the court that the said defendants Joe Judge and M. Bunting be and they are hereby fined in the sum of $200.00 each and adjudged to pay the costs of this action taxed at $........, said costs to include an attorney's fee of $50.00, to be taxed in favor of M. S. Odle, relator's attorney''.

This is the record upon which the original case was tried; and upon final submission, the trial court sustained defendants' objection to the contempt order offered by plaintiff.

4. INTOXICATING LIQUORS: contempt: "pleadings" authorized.

This was done on the theory that no such issue was tendered by what are called the pleadings in the case; and, as the affirmative matters stated by defendants in this so-called answer were not denied by plaintiff or confessed and avoided by him, there was nothing to try, and defendants were discharged. This certiorari proceeding is to test the validity of these conclusions. We may here say that the constitutional objections were each and all overruled by the trial court.

Broadly speaking, the case is this: Defendants admitted the sales of intoxicating liquor between October 3, 1911, and December 29, 1911, and that they had been enjoined from the sale or keeping for sale of intoxicating liquor from and after December 8, 1908. They claimed, however, that they were operating under the provisions of the mulct law from and after June 30, 1911, under valid statements of consent, properly canvassed on January 3, 1911; and that they had fully complied with all the provisions of the mulct law during the

time the sales complained of were made. Plaintiff and relator in the contempt proceeding was relying on the facts (1) that defendants were a partnership, and as such, running the saloon in violation of law; (2) that the defendants were guilty notwithstanding their compliance in terms with the mulct law provisions, because of the finding of the court, in another contempt proceeding, that defendants had violated the law and the original decree of court, and were in contempt of court in so doing, because of unlawful sales made by them since the 15th day of December, 1910. The order so finding was based upon a hearing had in the district court of Carroll County, on October 16, 1911, which resulted in an order finding them guilty of contempt, which order was made on November 18, 1911, and spread upon the court records, December 2d of the same year. (3) It was claimed that there were more saloons in the city of Carroll from July 1, 1911, to January 1, 1912, than the law authorized.

The trial court refused to entertain any of these matters because they were not in issue under the pleadings, and found that, as defendants had established all the matters pleaded by them, they were entitled to a discharge because plaintiff had filed no reply in avoidance of the matter so pleaded—inferentially holding that, if any issue was taken upon defendants' "answer", it was simply a denial interposed by law. The correctness of these holdings is the principal and primary question in the case. The solution thereof depends upon the proper application of the law relating to these matters.

Section 2451, Code Supplement of 1913, provides, among other things:

"Whenever any of the conditions of the third preceding section shall be violated . . . then the bar to proceedings as provided in the second and third preceding sections shall cease to operate, and the persons engaged in the sale of intoxicating liquors shall be liable to all of the penalties provided in this chapter."

Under this section, it has been held that one holding a permit under the mulct law, who has been convicted of the illegal sale of liquor during the existence thereof, forfeits all rights thereunder, and, to be protected in the future, must secure a new permit and proceed as if he had never held one. *Sawyer v. Gaynor*, 148 Iowa 115; *Rink v. Bollinger*, 145 Iowa 501.

Again, by the Acts of the 33d G. A., Chapter 143, it is provided that saloons must be conducted under the mulct law by qualified electors, and a partnership has no authority as such to run such a place. *Woodring v. Romberg*, 155 Iowa 105.

So much as to the substantive law. Notwithstanding this, the respondent in this case contends that, because of the nature of the pleadings, the defendants having proved all the affirmative allegations of the answer and there being no plea in confession and avoidance by way of reply, the defendants in the contempt proceeding were entitled to their discharge. Reliance is placed upon the rules applicable to ordinary statutory proceedings in support of the rulings of the trial court, which, if applicable here, would seem to justify the order made.

It must be remembered that the action sought to be reviewed was a proceeding for contempt under special statutes, and that all contempt proceedings, whether for violation of a liquor injunction or any other decree or order of the court, are special and *sui generis,* and the general procedural rules do not apply thereto, save as expressly provided. In their nature, they are both criminal and civil, and by some courts they are held to partake more of the nature of criminal than civil proceedings. See *Wells v. Given*, 126 Iowa 340; *Grier v. Johnson,* 88 Iowa 99; *Back v. State,* (Neb.) 106 N. W. 787; *State v. Court,* (Mont.) 60 Pac. 493; *Reymert v. Smith,* (Cal.) 90 Pac. 470; *Ex parte Kearney,* 7 Wheat. 37 (5 L. Ed. 391); *Gompers v. Buck Stove Co.,* 221 U. S. 418.

Generally, the proceedings in cases of constructive contempt are commenced by the filing of an affidavit stating the facts showing the contempt. *Silvers v. Traverse*, 82 Iowa 52. The defendant may then make a showing in excuse of his contempt or by denial, which must be sworn to; or he may stand mute, if he so pleases, and the matter is then heard by the court, without further pleadings. *Drady v. Given*, 126 Iowa 345. In some states, the defendant's written statement under oath is taken as true and, if sufficient, justifies his discharge. *O'Brien v. People*, (Ill.) 75 N. E. 108. But that is not the rule here. See *Drady* case, *supra; O'Flinn v. State*, (Miss.) 9 L. R. A. (N. S.) 1119, and cases cited; *Marvin v. Court*, 126 Iowa 355.

This matter is made plain from a consideration of the statutes relating to such proceedings. Sec. 2405 of the Code provides in part that:

"When an injunction has been granted, it shall be binding on the defendant throughout the judicial district in which it was issued, and any violation of the provisions of this chapter by manufacturing, selling or keeping for sale of intoxicating liquors anywhere in said district shall be punished as a contempt, as provided in this chapter."

And Sec. 2407 of the Code provides:

"In case of the violation of any injunction granted under the provisions of this chapter, the court, or in vacation a judge thereof, may summarily try and punish the offender. The proceedings shall be commenced by filing with the clerk of the court an information under oath, setting out the alleged facts constituting such violation, upon which the court or judge shall cause a warrant to issue, under which the defendant shall be arrested. The trial may be had upon affidavits, or either party may demand the production and oral examination of the witnesses. A party found guilty of contempt under the provisions of this section shall be punished by a fine of not less than two hundred nor more than one thousand

dollars, or by imprisonment in the county jail not less than three nor more than six months, or by both fine and imprisonment.''

Sec. 2424 provides that:

''In any indictment or information under this chapter, it shall not be necessary to set out exactly the kind or quantity of intoxicating liquors manufactured, sold, given in evasion of the statute, or kept for sale, nor the exact time of manufacture, sale, gift or keeping for sale, but proof of the violation by the accused of any provision of this chapter, the substance of which violation is briefly set forth, within the time mentioned in said indictment or information, shall be sufficient to convict such person; nor shall it be necessary in any indictment or information to negative any exceptions contained in the enacting clause or elsewhere, which may be proper ground of defense.''

It will be noticed that no answer is here contemplated. If there be a provision for any pleading by the defendant it is found in the chapter of the Code relating to contempts in general, which provides that:

''Sec. 4465.  Before punishing for contempt, unless the offender is already in the presence of the court, he must be served personally with a rule to show cause against the punishment, and a reasonable time given him therefor; or he may be brought before the court forthwith, or on a given day, by warrant, if necessary.  In either case he may, at his option, make a written explanation of his conduct under oath, which must be filed and preserved.''

''Sec. 4468.  No appeal lies from an order to punish for a contempt, but the proceedings may, in proper cases, be taken to a higher court for revision by certiorari.''

If the defendant refuses to make a written explanation under oath, he may be proceeded against without it. *Hardin v. Silvari*, 114 Iowa 157. And if he makes such explanation, it is not taken as true, but the court proceeds to hear the matter as if it had not been made. *Drady v. Court, supra.*

And this is particularly the case where the alleged contempt relates to the violation of a liquor injunction. *Drady v. Court, supra; Jones v. Byington,* 128 Iowa 397. The affidavit charging the contempt may be general, and need not set out the specific acts relied upon. *McGlasson v. Scott,* 112 Iowa 289; *Pumphrey v. Anderson,* 141 Iowa 140; *Koch v. Court,* 150 Iowa 151; *Barber v. Brennan,* 140 Iowa 678; *Jones v. Byington,* 128 Iowa 397.

It will be observed that the only paper which defendant is authorized to file is a written explanation of his conduct, under oath; that this is not conclusive; and that no other papers or pleadings aside from the original information and the written explanations are contemplated. The court or judge then hears the testimony and determines whether or not the party is guilty of the offense charged, on the whole record before it. No reply or answer to the written explanation is contemplated, and the information is broad enough to justify a conviction if, on the whole record, the testimony shows sales of liquor and the keeping thereof with intent to sell contrary to law. Prohibition is still the rule in this state, and all sales are presumed to be unlawful. The defendant must fully justify his sales, in order to escape the penalties of the law; and if he fail in that, or if it appears from the testimony as a whole that his sales were not justified, he must suffer the penalty; and if his acts were in violation of a previous injunction, he must be punished for contempt. No pleading in reply is contemplated, nor does it seem to be permitted. An information charging the contempt is the only paper contemplated, either as a basis for the proceedings or to meet anything set up in the explanation, no matter whether that be called an answer or an explanation. The case in this respect is much like a criminal one, and the prosecution is not authorized to file a reply. The only answer or plea in such cases is the one authorized by law. *State v. Caywood,* 96 Iowa 367.

What we have said has reference only to contempt pro-

ceedings, and not to actions to abate and enjoin nuisances by civil action. The trial court applied the rule applicable to pleadings in ordinary proceedings, and in this was in error. It should have received in evidence the order adjudging defendants guilty of contempt, and should also have considered the testimony to the effect that the saloon was operated by a partnership, and that the permit was issued to a partnership, which, in either case, would have been no protection to the defendants, under the authorities hitherto cited.

III. The constitutional questions were decided adversely to the defendants; and, of course, petitioner herein is making no complaint thereof, and it is not now contended by defendant Hutchison that the law was and is unconstitutional. Therefore, these are moot questions, not subject to review at this time. Moreover, there is nothing in the constitutional objections raised before the trial court in the original contempt proceedings, and no argument is made in support thereof. Such of these as have the substance of merit could not arise in such proceedings.

5. APPEAL AND ERROR: decisions reviewable: constitutional questions: non-appeal by successful party.

IV. In the name of the defendant Hutchison alone, what are called objections to the jurisdiction have been filed in this court, which read as follows:

"1. No authority to review contempt proceedings by certiorari is conferred by statute, or otherwise, upon the Supreme Court of Iowa, except where there has been a punishment for contempt, in which case power is limited to reviewing the legality of the proceedings leading to the punishment, and legality of the punishment.

"2. If review be attempted or had here, such review, or any effect given it, will be a denial of the due process of law guaranteed by the Constitution of the United States, and the state of Iowa, and a taking of property without due process of law, because of such want of jurisdiction.

"3. Assuming that there is statutory or constitutional warrant for the Supreme Court of Iowa's reviewing the action

of an inferior tribunal in refusing to punish one for contempt, such power cannot be validly exercised without making the person discharged a party to the proceedings, and, since the persons shown by the record to have been discharged are not parties to this proceeding, any judgment rendered, or action taken herein, is without power or jurisdiction, and if regarded, enforced, or given effect to, would be a denial of the due process of law guaranteed by the Constitution of the United States and the state of Iowa, and work a taking of property without due process of law, in violation of them.

"4.  Assuming that there is statutory or constitutional warrant for the Supreme Court of Iowa's reviewing the action of an inferior tribunal in refusing to punish one for contempt, such power cannot be validly exercised in a proceeding to which the person discharged is not a party, or, not being a party to the record, does not appear therein, and since the persons shown by the record to have been discharged are not parties to this proceeding, and have made no appearance herein, any judgment rendered or action taken herein is without power or jurisdiction, and if regarded enforced, or given effect to, would be a denial of the due process of law guaranteed by the Constitution of the United States, and the state of Iowa, and work a taking of property without due process of law, in violation of them.

"5.  If the statutes of Iowa, to wit:  Code Sections 4154 to 4162, both inclusive, and Code Section 4468, governing contempt proceedings, and review thereof, are constrained to warrant entertaining such proceedings as outlined above, they are void for the same reasons."

None of these are argued.  Joe Judge and M. Bunting were named as parties defendant in the petition for the writ of certiorari, but neither appeared in resistance thereto, nor

6. INTOXICATING LIQUORS: contempt: proceeding to establish: discharge by court: appeal: jurisdiction.

was either served with any notice of the petition or of the issuance of the writ, nor was the writ, when issued, served upon either. They do not appear in this court either in

person or by attorney nor has any argument been made for them. All the objections to our jurisdiction have been ruled adversely to defendant's contentions in many cases heretofore considered. See *Brown & Bennett v. Powers*, 146 Iowa 729; *Jones v. Mould*, 151 Iowa 599, 602; *Barber v. Brennan*, 140 Iowa 678. These cases so fully discuss the matter that there is no need to quote therefrom or to attempt to . add anything thereto. We reach the conclusion that the trial court was in error in its rulings on the admission of testimony and in discharging the defendants Judge and Bunting, and its rulings and orders and the judgment discharging them are, therefore, annulled and the cause is remanded for further proceedings in harmony with this opinion.—*Proceedings Annulled and Cause Remanded.*

LADD, EVANS and GAYNOR, JJ., concur.